This appeal is from a partial summary judgment entered in a consolidated election contest. Contestant Petey Ellis lost in his bid for mayor of Sumiton, and contestant Donald Watts lost in his bid for another municipal office in Sumiton. Ellis and Watts filed election contests and claimed that the winners (Gwin Wells and David Morgan, respectively) won their races because of the acceptance of illegal absentee votes, the rejection of legal votes, malconduct on the part of certain election officers, and miscalculation of the votes cast.
The contestants filed motions for partial summary judgment, alleging deficiencies in certain of the affidavits required to be filed with absentee ballots. Ala. Code 1975, § 17-10-7. The alleged deficiencies were 1) affidavits with defective signatures, either of the voter or of the witnesses to the affidavit; 2) affidavits with no date; and 3) affidavits lacking the reason for casting an absentee ballot. The parties filed briefs both in support of and in opposition to the motions for partial summary judgment. After considering the arguments of the *Page 383 
parties, the trial court entered the following order:
"ORDER GRANTING PARTIAL SUMMARY JUDGMENT
 "Upon the Motion for Partial Summary Judgment filed by the Contestants in the above styled and numbered consolidated cases, and upon consideration of same, it is the opinion of the court that voting by absentee ballot is a statutory privilege, and the process therefor [is] set out in Sec. 17-10-1 through 17-10-20, Code of Alabama. To prevent abuse of the absentee voting process, the statutes must be strictly construed.
 "The affidavit required by Sec. 17-10-7 must be a completed affidavit. An affidavit which is incomplete in any substantive area is a defective affidavit, and the ballot supported by that affidavit is void.
 "These premises considered, the court rules upon the issues presented by the Contestants as follows:
 "1. That an absentee affidavit on which the signature of the voter is incomplete or absent is an incomplete and, therefore, defective affidavit, and the ballot supported by that affidavit is void.
 "2. That an absentee affidavit on which the signature of a witness or Notary Public is incomplete or absent is an incomplete and, therefore, defective affidavit, and the ballot supported by that affidavit is void.
 "3. That an absentee affidavit on which there is no reason marked for voting absentee is an incomplete and, therefore, defective affidavit, and the ballot supported by that affidavit is void.
 "4. (a) That an absentee affidavit on which there is no date is an incomplete and, therefore, defective affidavit, and the ballot supported by that affidavit is void.
 "(b) That an absentee affidavit which is marked 'received' or is postmarked prior to the alleged date of signing is not void per se, but may be voidable, subject to examination by the court.
 "5. That additional variances in dates or location of the dates or signatures on the affidavit shall be reviewed by the court on an individual basis for a ruling as to validity prior to trial of this case.
 "6. That, for purposes of this case, the terms 'void ballot' and 'illegal vote' are synonymous."
On motion of the parties, the trial court granted permission to appeal from that interlocutory order of the Walker County Circuit Court. Permission was granted on April 5, 1989; hence, this appeal. (We note, parenthetically, that the trial court, in its order quoted above, merely announced the standard by which it would judge the challenged ballots; thus, it is clearly an interlocutory, and not a final, judgment.)
Alabama courts have not yet addressed the construction of the statute that authorizes absentee voting and sets out the manner in which that voting must be done (Ala. Code 1975, § 17-10-1 et seq.). Our research, however, has revealed two primary methods of construction developed and adopted by other jurisdictions that have addressed similar statutes.
A number of jurisdictions subscribe to the view that absentee voting laws should be strictly construed because the absentee voting statutes grant a privilege and do not confer an absoluteright; and because these statutes are in derogation of the common law. This "strict compliance" construction is based on the premise that statutory requirements for applying for an absentee ballot, marking an absentee ballot, taking the prescribed affidavit, and returning the ballot and affidavit are mandatory and, therefore, that strict compliance with the terms of the statute is required. By that construction, incomplete compliance, or lack of compliance, with any requirement of the statute, technical though it may be, invalidates the ballot. See, e.g., Garza v. Salinas,434 S.W.2d 153 (Tex.Civ.App. 1968).
The majority of jurisdictions, however, has held that absentee voting laws should be liberally construed in order to effectuate the legislative purpose of protecting and furthering a citizen's right to vote. "Substantial *Page 384 
compliance" with the statutory requirements is required under this interpretation. See, e.g., Mittelstadt v. Bender,210 N.W.2d 89 (N.D. 1973).
In Boardman v. Esteva, 323 So.2d 259 (Fla. 1975), cert.denied, 425 U.S. 967, 96 S.Ct. 2162, 48 L.Ed.2d 791 (1976), the dispute concerned the validity of 3,389 absentee ballots cast in a judicial election. Boardman, declared the winner, received the majority of the overall votes because he received the majority of the absentee votes cast. Esteva sought to have himself declared the winner of the election based on the votes cast via the voting machines only, and sought to have the election declared illegal with respect to the absentee ballots. The trial court granted Boardman's motion for summary judgment, but the intermediate appellate court reversed and declared Esteva the winner, holding that the law in Florida required strict compliance with the mandatory requirements of the absentee voting statute.
On appeal to the Florida Supreme Court, that court stated that the issue was whether the Florida absentee voting statute required strict compliance or substantial compliance with the provisions of the statute in order to have valid absentee ballots. The Court went on to explain the guiding principles in construing election statutes:
 "We first take note that the real parties in interest here, not in the legal sense but in realistic terms, are the voters. They are possessed of the ultimate interest and it is they whom we must give primary consideration. The contestants have direct interests certainly, but the office they seek is one of high public service and of utmost importance to the people, thus subordinating their interests to that of the people. Ours is a government of, by, and for the people. Our federal and state constitutions guarantee the right of the people to take an active part in the process of that government, which for most of our citizens means participation via the election process. The right to vote is the right to participate; it is also the right to speak, but more importantly the right to be heard. We must tread carefully on that right or risk the unnecessary and unjustified muting of the public voice. By refusing to recognize an otherwise valid exercise of the right of a citizen to vote for the sake of sacred, unyielding adherence to statutory scripture, we would in effect nullify that right."
Boardman v. Esteva, 323 So.2d at 263.
Having so stated, the Boardman Court held that, because the obvious will of the people was a preference for Boardman over contestant Esteva, and because of the notable absence of any allegation of fraud with respect to the conduct of the voters or the election officials, it could "countenance a different result, one contrary to the apparent will of the people, . . . [only if] the sanctity of the ballot and the integrity of the election [had not been] maintained, and not merely on the theory that the absentee ballots cast were in technical violation of the law." 323 So.2d at 263.
In 1984, the Florida Supreme Court, again faced with an election dispute, reaffirmed the Boardman decision and summarized the "Boardman factors" to be considered in determining whether an election should be set aside:
"(a) the presence or absence of fraud, gross negligence, or intentional wrongdoing;
"(b) whether there has been substantial compliance with the essential requirements of the absentee voting law; and
"(c) whether the irregularities complained of adversely affect the sanctity of the ballot and the integrity of the election."
Bolden v. Potter, 452 So.2d 564, 566 (Fla. 1984). See, also,Brown v. Grzeskowiak, 230 Ind. 110, 101 N.E.2d 639 (1951).
We find the Boardman rationale to be the correct one for resolving absentee voting statute disputes and, therefore, we adopt the law set out in that decision as it relates to the construction of Ala. Code 1975, § 17-10-1 et seq. Indeed, the language of § 17-10-4, the section setting out the procedure for applying for an absentee ballot, states that the application "need not be in any particular form, but it shall contain *Page 385 
sufficient information to identify the applicant." This language, in effect, requires "substantial compliance."
Because of the somewhat peculiar posture of this appeal (appeal by permission from an interlocutory partial summary judgment), and because of the absence of material portions of the record (e.g., the affidavits accompanying the absentee ballots), this cause is remanded for further proceedings consistent with the "substantial compliance" standard herein announced.
REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.
Steagall, J., dissents.