**GEORGE E. GOODWIN, Plaintiff**

**v.**

**THE ST. THOMAS-ST. JOHN BOARD OF ELECTIONS**
**and JOHN ABRAMSON, JR., Defendants,**
**and SENATOR LORRAINE L. BERRY,**
**Intervenor/Defendant**

Civil No. 671/2000

Territorial Court of The Virgin Islands

Division of St. Thomas and St. John

December 13, 2000

DESMOND L. MAYNARD, ESQ., SHAWN E. MAYNARD-HANHFELD, ESQ., Law Offices of Desmond L. Maynard, St. Thomas, Virgin Islands, *for Plaintiff*

KERRY DRUE, ESQ., DENISE GEORGE-COUNTS, ESQ., Assistant Attorneys General, Department of Justice, St. Thomas, Virgin Islands, *for Defendants*

CHAD C. MESSIER, ESQ., Dudley, Topper & Feuerzeig, St. Thomas, Virgin Islands, *for Intervenor/Defendant*

MEYERS, *Judge*

## MEMORANDUM OPINION

(December 13, 2000)

THIS MATTER is before the Court on Plaintiff's request for declaratory judgment and injunctive relief. Plaintiff Senator George Goodwin ("Goodwin") asks the Court to enjoin the Defendants, The Board of Elections for the District of St. Thomas and St. John and John Abramson, Jr.[1] (collectively "the Board"), from certifying the results of the November 2000 general election. Goodwin also asks that the Court invalidate the absentee ballots of said election, and order that the election be certified based on the results of the November 8, 2000 tabulation only, whereby Plaintiff would be declared the winner of the seventh senatorial position in the St. Thomas and St. John District. Senator Lorraine Berry ("Berry"), who placed seventh in the senatorial race after the absentee tabulation, was granted leave to intervene.

Goodwin claims that the inclusion of some of the absentee ballots in the general election violated Virgin Islands election law and, therefore, all absentee ballots should be excluded from the election. Specifically, Goodwin alleges that the Board counted absentee ballots that lacked postmarks, ballots that were not signed or notarized, ballots that were in

---

[1] John Abramson, Jr. is the Supervisor of Elections for the Virgin Islands.

unsealed and/or torn envelopes, and ballots that were in envelopes containing more than one ballot.

Although an *ex parte* Temporary Restraining Order was issued by this Court on Monday, November 27, 2000, enjoining the Board from certifying the results of the general election, papers submitted to this Court by the Board on November 29, 2000, showed the election results had already been certified prior to the issuance of the Temporary Restraining Order.[2] Therefore, Goodwin's request to have the Board enjoined from certifying the election is now moot and will not be addressed. For the reasons that follow, Goodwin's other requests for injunctive and declaratory relief will be denied.

## FACTS

A hearing was conducted on December 6, and 7, 2000. Based on all the credible evidence and reasonable inferences drawn from that evidence, this Court finds the following facts:

Goodwin and Berry are incumbent senators in the Twenty-Third Legislature of the Virgin Islands in the District of St. Thomas and St. John. Both Goodwin and Berry ran as candidates for re-election to the Legislature in the general election held on November 7, 2000. The Board is responsible for running and operating the election system in the Virgin Islands.

There were a number of candidates listed on the ballot for the office of Senator. Of all the senatorial candidates listed, only the seven candidates with the most votes, with respect to the total number of votes cast, would be selected to become members of the Twenty-Fourth Legislature. When the results of the votes registered by the electronic voting machine were announced on November 8, 2000, Goodwin placed seventh among the senatorial candidates with 4,998 votes and Berry placed eighth with 4,883 votes — a difference of 115 votes. However, this tabulation alone did not determine which candidate would ultimately place seventh in his or her bid to the Twenty-Fourth Legislature.

On November 18, 2000, the Board tabulated the absentee ballots. All of the absentee ballots were removed from outer envelopes that were

---

[2] The Government submitted a Notice To The Court indicating the results of the November 7, 2000 general election were certified on Wednesday, November 22, 2000, five days before the Temporary Restraining Order was issued.

sealed. In accordance with V.I. Code Ann. tit. 18, § 665(c), the Board had stamped and endorsed all mailing envelopes containing absentee ballots with the date they were received in the Board's office, and the initials of the Board member who received it[3] There was testimony that someone saw an absentee ballot delivered to the Board after November 7th. The Board did not dispute this. Rita Brady, Chairwoman of the Board of Elections ("Brady"), explained that there were some ballots hand delivered to the Board after the November 7th deadline, and pursuant to Section 665(c), the Board accepted the ballots.[4] However, Brady stated the Board noted the late date the ballots were received but did not include them in the tabulation on November 18th.

Senatorial candidates were allowed to have watchers present during the tabulation of the absentee votes.[5] Pursuant to Section 668 of Title 18, these watchers could challenge any absentee ballot for noncompliance with Virgin Islands absentee voting law.[6] Both Nicholas Friday

---

[3] Section 665(c) provides that

> All mailing envelopes containing absentee ballots received by a board of elections under this section, whether received in sufficient time for the ballots to be counted as provided in this chapter; or not, shall be stamped or endorsed by a member of the board of the clerk with the date of their receipt in the board's office, and if received on the day of election, with the actual time of day received, and such record shall be signed or initialed by the board member or clerk making it.

18 V.l.C. § 665(c).

[4] *See id.*

[5] Section 667(b) of Title 18, provides that "the watchers authorized for general elections by section 552 of this title may, in the manner provided by that section, be present at any count of absentee ballots under this chapter." 18 V.I.C. § 667(b).

[6] Section 668 of Title 18, entitled "Challenges; procedure" provides that

> All absentee ballots received by a board of elections shall be subject to challenge by a watcher or other qualified elector prior to the removal of the absentee ballot envelope from the envelope containing the applicant's affidavit, for noncompliance with this chapter or for any person allowed by applicable provision of law, and if such a ballot is challenged the chairman or vice-chairman of the board shall endorse on the affidavit envelope the word "Challenged", with the name and address of the voter who makes the challenge. If the board is satisfied that the challenge is well grounded, the ballot envelope shall not be removed from the affidavit envelope and shall not be counted, but shall be preserved and mailed or delivered to the Supervisor of Elections with other rejected ballots; otherwise,

("Friday") and Carla Joseph ("Joseph") were accepted by the Board to be Goodwin's watchers during the absentee vote tabulation. Goodwin was not present during the absentee vote tabulation. However, Berry and other senators elect, including Celestino White ("White), Norma Samuel ("Samuel"), and Carlton Dowe ("Dowe") were present. The senators elect present were accepted by the Board to be watchers on behalf of themselves. Brady recorded all the challenges made by the watchers.

The watchers raised a number of challenges during the tabulation of the absentee votes. While the testimony of White and Samuel varied with respect to the total number of challenges made, the Board recorded a total of 56, and this Court finds that there were a total of 56 challenges made. Brady testified that the Board packaged the absentee ballots in sets of 25, and every time the Board completed opening one hundred envelopes, she would announce "We have just opened a hundred and we have 'X' (whatever number of challenges the Board had up until that point) challenges, and we are proceeding." Brady testified that none of the watchers in the room disagreed with her statement, and she simply kept counting. When Brady would open the absentee ballots, they were passed around to each of the watchers so that they could inspect the envelopes and ballots. Brady agreed with the testimony of Plaintiff's witnesses with respect to most of the challenges they stated they made. However, Brady explained that the Board was responsive to each of the challenges made and no absentee ballot included in the tabulation violated any provision of Virgin Islands election law.

There were a total of 554 absentee ballots, of which 480 lacked postmarks. In fact, the first challenge made by the watchers was in regard to the lack of postmarks on the absentee ballot envelopes. White, Samuel, and Friday all testified that this was a general blanket challenge made to disqualify all absentee ballots that lacked postmarks. Of the 480 ballots without a postmark, 242 were hand delivered to the Board and, as such, were not postmarked. The remaining 238 ballots were mailed to the Board but did not receive postmarks because they were sent in pre-paid postage envelopes (franked envelopes) provided by the Board.[7] Pre-paid postage

---

the affidavit envelope shall be opened and the absentee ballot envelope placed in the ballot box as provided in section 667(a) of this title.

18 V.I.C. § 668.

[7] The Postmaster for the United States Postal Service in the Virgin Islands, Louis Austin Jackson, testified that the Post Office had special rules and regulations that the

mail (franked mail) does not bear a postage stamp that can be cancelled by the United States Postal System; therefore, they would not be postmarked.[8] Brady testified that the Board sent pre-paid postage envelopes to absentee voters because voters should not have to pay to vote.

Since the exclusion of the absentee ballots without postmarks would have resulted in the disenfranchisement of 480 voters, the Attorney General, Iver A. Stridiron, who acts as counsel for the Board,[9] advised the Board to count the non-postmarked ballots only if there were other indicia of timeliness present. Specifically, the Attorney General advised the Board to include the 480 ballots without postmarks if there was a notation made by the Board that the ballot was received on or before November 17, 2000, and if the affidavit was signed and dated by the voter on or before November 7, 2000.

The Board then resumed tallying the absentee ballots and the watchers proceeded with making additional challenges. The additional challenges made included such things as ballots in unsealed inner envelopes being taken from sealed outer envelopes or torn envelopes, questions about the authenticity of the signatures of voters, ballots being counted when they were removed from envelopes that contained more than one ballot, and

---

absentee ballot mailing envelopes had to follow. He testified that absentee mailing materials fell under a special category in the business reply mail umbrella which meant absentee mailing materials were required to have FIM (facing identification marks) that would signify postage had already been paid and that there was no need to cancel that particular type of mail. The Postmaster indicated that the rules applied to local and state elections in the United States as well. The Postmaster also clarified the phrase "franked mail" that appears in Section 665(a). The Postmaster testified that "franked mail" is not the precise term to refer to prepaid postage mail because prepaid postage mail had several categories. "Franked mail" as used by the Post Office, specifically referred to mail used by members of Congress or the Presidential Cabinet, which like other types of prepaid postage mail, does not get postmarked because there are no stamps to cancel.

[8] The Postmaster testified that envelopes that have stamps have a cancellation placed across the stamp to prevent the stamp from being used again.

[9] Pursuant to Section 51 of Title 18, the Attorney General shall serve as counsel for each board of elections and "shall advise the board, from time to time, regarding its powers and duties, and the rights of candidates and electors, and concerning the best methods of legal procedure for carrying out the various provisions of this title." 18 V.I.C. § 51.

ballots being counted where they had not been signed or notarized. It was unclear exactly which watchers made which challenges though Brady testified the majority of the challenges were made by Senators elect White and Samuel. Brady testified that at times, the watchers became so noisy that it became difficult to hear who was making a challenge. However, Brady stated that despite the noise, she was always able to hear when a challenge was made. When a challenge was made, even if Brady could not determine exactly who made the challenge, Brady wrote the word "challenged" across the envelope and put that envelope aside. After the Board completed opening all of the absentee ballots, the board reviewed the absentee ballots challenged that had been set aside. After resolving each challenge to the satisfaction of the watchers, the absentee ballot, if the Board determined it was valid, was included in the tabulation.

At the end of the absentee ballot tabulation, the 56 challenges made resulted in the invalidation of 19 ballots, with the remaining 37 ballots being included in the count. Berry gained 263 votes and Goodwin gained 122 votes. The additional gains gave Berry an aggregate of 5,146 votes and Goodwin a total of 5,120 votes — a difference of 26 votes. Berry, therefore, moved into the seventh place, which would result in her being re-elected as a senator in the Twenty-Fourth Legislature. Goodwin, now in the eighth place, would not be re-elected.

## DISCUSSION

Plaintiff may seek injunctive and declaratory relief to contest a decision of the Board of Elections on a matter that has been challenged, for allegations of abuse of discretion or disregard of a statute. *Compare State ex. rel. Beck v. Casey,* 51 Ohio St. 3d 79, 554 N.E.2d 1284, 1285 (Ohio 1990) (stating, in case regarding petitions, that Board's decisions are subject to review for allegations of fraud, corruption, abuse of discretion, or a clear disregard of statutes of applicable legal provisions).

■ Mandamus-like relief, essentially an affirmative injunction, may be granted pursuant to V.I. Code Ann. tit. 5 § 1361(a),[10] if Plaintiff can

---

[10] Section 1361 of Title 5, entitled "Remedies formerly available by writ of mandamus to compel performance of duties"

(a) In an appropriate action, or upon appropriate motion in an action, under the practice prescribed in the Federal Rules of Civil Procedure and in this title, the district court may issue a mandatory order to any inferior court, corporation, board, officer, or person, to compel the performance of an act which the law specifically

show the following three requirements: (1) a clear right in the plaintiff for the relief sought; (2) a plainly defined or peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available. *Democratic party of the Virgin Islands, et al. v. Board of Elections, St. Thomas-St. John, et al.*, 22 V.I. 465, 459 (D.V.I. 1986*).* This Court concludes, that if Goodwin is to prevail, mandamus-like relief would be most appropriate where it would be difficult to shape any other form of relief. *Compare id.* at 469-70.

■■ In determining whether Goodwin is entitled to mandamus relief, this Court must address two questions: (1) whether the absentee voting irregularities complained of would require the invalidation of any of the absentee ballots in the November 2000 general election; and (2) whether the invalidation of those ballots would change the outcome of the election. *See Bryan v. Todman,* 28 V.I. 42, 45, 52 (Terr. Ct. 1992) (denying request for declaratory judgment where Plaintiff failed to show election irregularities would have changed or affected outcome of election). In the absence of any Virgin Islands statute explicitly requiring that absentee ballots be excluded for technical violations of absentee voting law, this Court must determine whether under the circumstances of this case, a ballot should be invalidated to effectuate the legislative intent in establishing a particular voting requirement. *See Petition of Kriso,* 276 N.J. Super. 337, 647 A.2d 1373, 1377 (N.J. Super. Ct. App. Div. 1994). Hence, this Court must first address whether there should be strict compliance or substantial compliance with the absentee voting statutes.

Courts generally have applied either a strict compliance or substantial compliance rule to determine whether a technical violation of an absentee voting statute mandates that the ballots be excluded from the election count. *See, e.g., Wells v. Ellis,* 551 So. 2d 382, 383-84 (Ala. 1989) (discussing courts either apply strict compliance or substantial compliance rule, but adopting substantial compliance rule). The majority

---

enjoins as a duty resulting from an office, trust, or station. Although such order may require the court, corporation, board, officer, or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, the order shall not control judicial discretion. The order shall not be issued in any case where there is a plain, speedy, and adequate remedy in the ordinary course of the law.

5 V.I.C. § 1361.

of jurisdictions, however, require that there be substantial compliance with the statutory requirements in order to effectuate the legislative purpose of protecting and furthering a citizen's right to vote. *Id. at 383.* Even some jurisdictions that have adopted the strict compliance rule, may nevertheless allow a technical violation of an absentee voting statute to avoid disenfranchising a voter. *See, e.g., Foust v. May,* 660 S.W.2d 487, 489-90 (Tenn. 1983) (allowing technical violation of absentee voting law if such a violation did not affect the integrity of the ballot, in that it did not intimidate or influence the fair expression of the will of the voters, or allow those ineligible to vote to cast ballots, or if the violation resulted because the registrar failed to perform her duties properly).

In *Boardman v. Esteva,* 323 So. 2d 259 (Fla. 1976), the Florida Supreme Court considered whether absentee voting law requires strict compliance or substantial compliance, to give validity to the ballot. The case involved an election contest where one candidate. *Esteva,* received 404 more machine votes than the other candidate, *Boardman.* But since *Boardman* received 653 more absentee votes, for an overall majority of 249 votes, he was declared the winner. *Esteva* filed an action asking the Court to declare him the winner of the election on the basis of the machine count only, and have the election declared illegal with respect to the absentee ballots cast. *Esteva* alleged that there were numerous absentee voting irregularities.

The Florida Supreme Court, in determining which standard should be applied, noted

> We first take note that the real parties in interest here, not in the legal sense but in realistic terms, are the voters. They are possessed of the ultimate interest and it is they whom we must give primary consideration. The contestants have direct interests certainly, but the office they seek is one of high public service and of utmost importance to the people, thus subordinating their interests to that of the people. Ours is a government of, by and for the people. Our federal and state constitutions guarantee the right of people to take an active part in the process of that government, which for most of our citizens means participation via the election process.

*Boardman, 323 So. 2d at 263.* In adopting the substantial compliance standard, the Court noted the factors that should be considered in determining the effect of irregularities on the validity of absentee ballots cast as follows:

(1) the presence or absence of fraud, gross negligence, or intentional wrongdoing;

(2) whether there has been substantial compliance with the essential requirements of the absentee voting law; and

(3) whether the irregularities complained of adversely affect the sanctity of the ballot and the integrity of the election.

*Id.* at 269.

As this Court has determined the rationale used by the Florida Supreme Court in the *Boardman* case to be persuasive, and used by several jurisdictions in analyzing absentee voting disputes, this Court has decided to adopt it and apply it to the case at hand. *See, e.g., Wells, 551 So. 2d at 384* (using *Boardman* factors to analyze absentee voting disputes in Alabama).

Section 665(a) of Title 18 of the Virgin Islands Code which governs the alleged absentee voting irregularities in this case, provides that

(a) An absentee who has received an absentee ballot may vote by mailing or causing to be delivered to the board of elections for the proper election district such ballot marked and sworn to, as follows:

After marking the ballot, the voter shall enclose and seal it in the envelope provided for that purpose. He shall then swear and subscribe to a self-administered oath which shall be provided to the absentee on a printed form along with the absentee ballot and he shall further execute the affidavit on such envelope and shall enclose and seal the envelope containing the ballot in the return mailing printed, as provided in paragraph 3 of subsection (a) of section 663 of this title, with the name and address of the board of elections for the election district in which he desires to vote, endorse thereon his name and return address, and shall then mail the envelope, or cause it to be delivered, to the board of elections; provided that such envelope must be postmarked no later than the day of election and must be received by the board no later than ten days after the day of election for the absentee vote to be counted. Absentee ballots received from overseas in franked envelopes, which may not be postmarked, or from persons who are members of the Armed Forces of the United States or a spouse of any member

of the Armed Forces of the United States, shall be counted if they are received by the board no later than ten (10) days after the day of election regardless of the postmark date. In the case of a recount authorized by the board, any ballot postmarked no later than the day of election and received by the board no later than 5 p.m. the day before the recount shall be counted.

18 V.I.C. § 665(a).

Goodwin alleges that the counting of absentee ballots in unsealed envelopes violated Section 665. However, further clarification is necessary. Brady testified that although some of the ballots and affidavit envelopes (the inner envelopes) may have been unsealed, all of the outer envelopes that contained them were always sealed.[11] Thus, Goodwin's complaint here is really that the removal of ballots from unsealed inner envelopes, taken from sealed outer envelopes violated Section 665(a). Section 665(a) requires the voter to enclose and seal the ballot in the envelope provided by the board of elections after marking the ballot. Section 665(a) further requires the voter to then place that envelope in the affidavit envelope, which should also be sealed. Applying Section 665(a) to the case at hand would seem to require this Court to conclude that the counting of ballots in unsealed inner envelopes, but sealed outer envelopes, violated Section 665(a).

However, Section 665(d) provides an exception to the requirement in Section 665(a) that the ballots first be placed in sealed inner envelopes. According to Section 665(d), if the ballots are faxed to the board of elections, the board of elections need only place the ballots, along with the signed statement and affidavit in a marked envelope then seal it.[12] As

---

[11] Pursuant to Section 663, the absentee ballots included three envelopes: (1) the ballot envelope, where the voter placed the absentee ballot; (2) the affidavit envelope, where the voter placed the ballot envelope; and (3) the return mailing envelope, where the voter placed the affidavit envelope containing the ballot. See 18 V.I.C. § 663.

[12] Section 665(d) provides in its entirety

If the absentee resides outside the United States or is a member of the United States Armed Forces or a spouse or dependent of a member of the Armed Forces and is otherwise a qualified elector, and believes that he will be unable to vote timely by mail, the absentee may apply for registration and an absentee ballot by facsimile. The absentee may also request that the Supervisor of Elections transmit an absentee ballot to him by facsimile. The absentee may then either mail or transmit by electronic facsimile his marked ballot to the proper board of elections.

Section 665(d) does not require the board of elections to first place the faxed ballot in a sealed inner envelope, then in a sealed affidavit envelope to protect the ballot's integrity, it is arguable that if there were absentee ballots that were not faxed, in unsealed inner envelopes, but sealed outer envelopes, the integrity of these ballots, like those of the faxed ballots, would not be compromised.

■ Nevertheless, as the ballots in question were not ballots that had been faxed to the Board, the counting of the absentee ballots in unsealed inner envelopes, taken from sealed outer envelopes, constituted a technical violation of Section 665(a). This Court must now decide whether the technical violation of Section 665(a) mandates the exclusion of these absentee ballots from the tabulation. Applying the *Boardman* factors, this Court concludes that the absentee ballots in unsealed inner envelopes, but sealed outer envelopes, substantially complied with Section 665(a) and, therefore, were properly included in the absentee vote tabulation.

Here, there is no allegation of fraud, gross negligence, or intentional wrongdoing. In addition, aside from the inner envelopes not being sealed, there was substantial compliance with the essential requirements of Section 665(a). In fact, all of the absentee ballots were removed from outer envelopes that were sealed. The irregularities complained of did not affect the integrity of the ballot. If the ballot had been faxed, and not placed in the sealed inner envelope, the ballot would nevertheless have been valid. Additionally, the failure of the voter to seal the inner envelope simply means that the voter has waived the secrecy of the ballot, not that the vote should be invalidated altogether. *See, e.g., In re*

---

(1) If the absentee chooses to transmit the marked ballot to the board of elections by facsimile, the transmittal shall contain the following statements:

"I understand that as a result of my transmittal by facsimile of my marked absentee ballot, I hereby voluntarily waive my right to a secret ballot."

(2) This statement shall be followed by the absentee's signature, social security number and date of signature. Upon receipt of the transmittal, the board of elections shall place the marked ballot along with the signed statement and affidavit in an appropriately marked envelope and seal it. The board of elections and the staff thereof shall take the necessary steps to maintain and safeguard the confidentiality of the marked ballots received by facsimile.

18 V.I.C. § 665(d).

*General Election,* 255 N.J. Super. 690, 605 A.2d 1164, 1179 (N.J. Super. Ct. Law Div. 1992) (validating absentee ballot excluded because not in sealed inner envelope and stating voters need not seal inner envelope, as failure to do this simply means they have waived right to secrecy of ballot). For all the foregoing reasons, despite the technical violation of Section 665(a), the absentee ballots taken from unsealed inner envelopes, but sealed outer envelopes, substantially complied with absentee voting law, and must therefore remain included in the election tabulation.

Goodwin also alleges that absentee ballots were included in the tabulation where the ballots were taken from envelopes that contained more than one ballot. Again, further clarification is necessary. Brady explained, and White agreed, that there were only about two instances where ballots were taken from envelopes that contained more than one ballot envelope. On both occasions, the inner affidavit envelope contained two ballots. On one of the occasions, the Board disqualified the two ballots, not because they were included in the singular affidavit envelope, but because the affidavit envelope containing them was not completed correctly. In the other instance, the Board allowed one of the ballots in the affidavit envelope containing the two ballots to be counted. The Board did this because of the two ballots in the affidavit envelope, one of the ballots was in a sealed ballot envelope, and the other ballot was not in any envelope at all. In this instance, the Board invalidated the ballot that was not in any envelope, and included the ballot that was in the sealed envelope in the tabulation.

▇ Pursuant to Section 665(a), a voter is required to place one ballot in the ballot envelope, then place the ballot envelope in the affidavit envelope, and then place the affidavit envelope in the return mailing envelope provided by the Board. *See* 18 V.I.C. § 665(a). Applying the *Boardman* factors, this Court finds that including the ballot in the sealed envelope, where another loose ballot was also in the affidavit envelope, violated Section 665(a). Again, there is no allegation of fraud, gross negligence, or intentional misconduct. However, this Court finds that an essential requirement of absentee voting law is that each absentee voter only be entitled to one vote. Here, the affidavit envelope, the outside of which signified that the inner votes came from one voter, included two votes. Despite the fact that one ballot was in a sealed envelope, and the other ballot was loose, there was no way for the Board to determine, with

reasonable certainty, which ballot the voter intended to cast,[13] or whether both of the ballots came from that one voter.[14] Thus, to include the one ballot in the sealed envelope, and disregard the other, where both of the ballots were in one affidavit envelope, signed and addressed by one voter, failed to substantially comply with Section 665(a). Thus, this Court concludes that the absentee ballot in the sealed envelope, like the one that was loose, should not have been included in the vote tabulation.

The other absentee voting irregularities alleged by Goodwin are without merit. The express language of Section 665(a) allows for absentee ballots to be valid, and therefore counted, even if they do not have a postmark, in at least two situations: (1) where the absentee ballots are not mailed, but hand delivered to the board of elections; and (2) where the absentee ballots are overseas ballots or military ballots, in franked envelopes, and therefore may not be postmarked. Thus, in our case, assuming that the absentee ballots counted, but not postmarked, fell into one of these two categories, then the fact that the Board included them in the count was not a violation of Section 665(a).

■ Here, while it was correct that 480 of the 554 ballots lacked a postmark, that was because 242 were walk-in-ballots, and the other 238

---

[13] The fact that the ballot was in a sealed envelope did not necessarily mean that was the ballot the voter intended to cast because there were other ballots, in unsealed ballot envelopes, but sealed affidavit envelopes, that were included in the absentee vote tabulation.

[14] No one testified that there were individual absentee voters who received more than one absentee voting application package. Additionally, it could very well be that the ballot in the sealed envelope came from someone who received an absentee package, but decided to vote in the election pursuant to Section 673, and the loose ballot came from the person whose name was signed on the affidavit envelope. Section 673, entitled "Voting in person" provides:

Nothing in this chapter shall prevent a voter who has mailed or delivered a ballot under this chapter from voting in person. An applicant for an absentee ballot shall vote in person if he is able to do so even though his application for such ballot was made in good faith; and if it is shown that he is able to vote in person, his absentee ballot shall not be counted.

The Supervisor of Elections shall promulgate rules and regulations designed to insure that no elector casts both an absentee ballot and a regular ballot in the same election.

18 V.I.C. § 673.

were in franked envelopes, and as a result, lacked a postmark. In accordance with the express provisions in Section 665(a), the inclusion of the absentee ballots without the postmarks in the election count did not violate absentee voting law. Furthermore, as the Court noted in *Hammond v. Hickel*, 588 P.2d 256, 269 (Alaska 1978), the postmark requirement can be satisfied by a date received stamp, or the date of witnessing of the voter certificate, or a postmark, or any combination of these showing that the ballot was cast on or before election day. Here, the Attorney General instructed the Board to include the non-postmarked ballots only if they were noted as being received by the Board on or before November 7, 2000, and the signature on the affidavit envelope was dated on or before November 7, 2000. Thus, although the absentee ballots were not postmarked, there were still other indicia of timeliness that satisfied the requirement of a postmark. Hence, the inclusion of ballots that were not postmarked in the tabulation did not violate Section 665(a).

Goodwin further accused the Board of including absentee ballots without signatures in the tabulation. However, while it was correct that there were challenges made because a few of the affidavit envelopes lacked signatures, Brady testified that none of those ballots were included in the vote tabulation. The Board decided not to include those votes in the tabulation after concluding they were invalid without the signature of the voter. This Court cannot invalidate absentee ballots in an election count if the ballots were never included to begin with.

Goodwin further alleged that some of the absentee ballots included in the election count were not notarized. However, pursuant to Section 665(a), ballots do not have to be notarized. Section 665(a) provides that the voter "swear and subscribe to a self-administered oath which shall be provided to the absentee on a printed form along with the absentee ballot and he shall further execute the affidavit on such envelope and shall enclose and seal the envelope containing the ballot in the return mailing envelope printed." 18 V.I.C. § 665(a). Thus, none of the absentee ballots were required to be notarized, and the fact that they were included in the absentee ballot tabulation count did not constitute a violation of Section 665(a).

Goodwin also alleged that ballots were included in the tabulation where the signatures of the voters on affidavits did not match signatures on the absentee ballot application. However, Brady testified that there were only about two or three challenges like that, and when the Board could not match the signature with the one on the application, the Board

104

would get the voter's registration car, verify the signature to the satisfaction of the challenger, and then the ballot was included in the tabulation. Hence, Goodwin failed to demonstrate that the inclusion of those ballots violated Section 665(a).

Goodwin also alleged that ballots taken from torn envelopes were included in the absentee tabulation. However, Goodwin failed to show which, if any, envelopes were torn. Since Brady testified that all of the outer mailing envelopes that the inner affidavit and ballot envelopes were taken from were sealed, thereby protecting the integrity of the inner ballots, this Court concludes that Goodwin's allegation here was without merit and did not constitute a violation of Section 665(a).

As Goodwin has failed to show that any of the alleged irregularities complained of would change the outcome of the election, Goodwin is not entitled to mandamus relief. Goodwin has, at most, established that one of the ballots included in the absentee vote tabulation violated Section 665(a). Even if this Court were to invalidate that one ballot, it would not change the outcome of the election where Berry defeated Goodwin by a total of 26 votes. Additionally, though not addressed at length here, Goodwin also faces the question of whether his watchers' possible failure to challenge the ballot this Court has determined should be invalidated, would preclude him from raising challenges after the ballot has already been commingled with the ballots that were valid. *See, e.g., Bell v. Gannaway*, 303 Minn. 346, 227 N.W.2d 797, 804-05 (Minn. 1975) (holding even if absentee ballot should have been rejected for noncompliance with absentee voting law, where timely challenge to ballot is not made, and ballot is commingled with all other ballots, any future challenge after commingling is barred). It was not clear from the evidence presented at the hearing, whether Friday or Joseph, Goodwin's watchers, challenged any of the ballots that were removed from envelopes containing more than one ballot. Nevertheless, since invalidating the one ballot would not change the outcome of the election, this Court will not address whether Goodwin would have standing to challenge that ballot.

## CONCLUSION

██ Because Goodwin has failed to establish that the absentee voting irregularities complained of would require this Court to invalidate a sufficient number of ballots that would change the outcome of the

105

election, Goodwin's request for declaratory and injunctive relief will be denied. An appropriate Order will follow.