**HARRY DANIEL, Plaintiff**
**vs.**

**VIRGIN ISLANDS JOINT BOARDS OF ELECTIONS, ST. THOMAS-ST.**
**JOHN BOARD OF ELECTIONS and JOHN ABRAMSON, JR. as**
**SUPERVISOR OF ELECTIONS, Defendants**

Civil No. ST-07-CV-380

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

August 13, 2007

CLIVE C. RIVERS, ESQUIRE, Law Offices of Clive Rivers, St. Thomas, V.I., *For Plaintiff.*

TAMIKA ARCHER, ESQUIRE, AQUANNETTE Y. CHINNERY-MONTELL, ESQUIRE, Assistant Attorneys General, Department of Justice, St. Thomas, V.I., *For Defendants.*

CARROLL, *Judge*

## MEMORANDUM OPINION AND ORDER

(August 13, 2007)

**THIS MATTER** is before the Court on the Plaintiff's Motion for a Preliminary Injunction or, in the alternative, for mandamus relief and for a declaratory judgment declaring the results of the special election void, and declaring Plaintiff to be a winner of the special election. On July 26, 2007, the Court gave notice to the parties and issued an order consolidating trial of this matter on the merits with the preliminary

injunction hearing. The Court also allowed counsel for Plaintiff and Defendants to submit post-trial memoranda. Upon consideration of the Plaintiff's claims for relief, and the arguments in opposition submitted by the Defendants, as well as the testimony and evidence adduced at trial on July 27, 2007, the Court has decided that mandamus relief in favor of the Plaintiff is appropriate in this case and will be ordered for the reasons set forth below.

## FACTS

The material facts in this case are undisputed. Plaintiff, Harry Daniel ("Daniel"), is a resident of St. John, Virgin Islands, a taxpayer and candidate for the office of delegate to the Fifth Constitutional Convention of the Virgin Islands. Defendants, the Virgin Islands Joint Boards of Elections ("Joint Board") and the St. Thomas-St. John Board of Elections (the "Board"), both elected bodies within the Virgin Islands Government, are authorized pursuant to V.I. CODE ANN. tit. 18, § 47 to regulate elections and to certify the result of elections. Defendant John Abramson, Jr. ("Abramson" or "Supervisor Abramson") is the supervisor of elections and a servant of both the Board and the Joint Board. The Defendants were tasked by the Virgin Islands Legislature with conducting a special election for the delegates to the Fifth Constitutional Convention pursuant to Act No. 6688 (2004 V.I. Sess. Laws 191) ("Act No. 6688"). According to Act No. 6688, section 1(d), subsection (2), "Thirteen delegates shall be elected from the District of St. Thomas-St. John, who shall be resident of either St. Thomas or St. John, provided that **not fewer than** two delegates shall be residents of St. John." (Emphasis added.)

Prior to the special election, Defendants originally developed a ballot that listed all of the candidates—residents of St. Thomas and St. John alike—in a single slate ("the original ballot"). The original ballot instructed voters to "[s]elect no more than thirteen" candidates from the St. Thomas-St. John District. The ballot also contained the language taken directly from Act No. 6688: "Thirteen delegates shall be elected from the district of St. Thomas-St. John, who shall be residents of either St. Thomas-St. John, provided that **not fewer than two delegates shall be residents of St. John.**" (Emphasis added.) According to the testimony of Supervisor Abramson, the original ballot was promulgated to the candidates, including Daniel, for their inspection and approval in advance

34

of the election.[1] On June 1, 2007, however, several members of the Board, having become concerned about some issues relating to the ballot design, met and called a meeting of the Joint Board for the following day, June 2. During the June 2 special meeting of the Joint Board, which was conducted by telephone with each district's Board in their respective district office, seven members unanimously approved a single motion that made several changes to the design of both the territory-wide at-large delegates section of the ballot and the St. Thomas-St. John section of the ballot. As several witnesses testified, a quorum for any meeting of the Joint Board is a majority of the members. Since there are fifteen members of the Joint Board, the presence of eight members constitutes a quorum.

The St. Thomas-St. John section of the ballot approved by the Joint Board on June 2 for use in the special election ("the revised ballot") split the candidates into two separate slates, one listing all of the candidates from St. Thomas with instructions to the voters to select no more than eleven St. Thomas candidates, and the other slate listing all of the St. John resident candidates with instructions to "[s]elect **no more than 2**" St. John candidates (emphasis added).

Evidence was offered at trial to establish when Daniel first received notice of the revised ballot. After the June 2 meeting of the Joint Board, the ballot changes immediately received prominent coverage in the news media. However, Daniel testified on direct examination that he did not realize until June 12, the day of the election, that the revised ballot listed St. John resident candidates in a separate slate. As a result, Daniel did not register any formal complaint about the revised ballot until after the special election.

Upon questioning by the Court, Daniel made important concessions regarding the notice he had received about the revision in the special election ballot. Daniel conceded that he read front-page headlines in the *V.I. Daily News* on Monday, June 4 and Tuesday, June 5, which indicated

---

[1] Abramson testified that the original ballot was different from the original ballot which was introduced into evidence as Plaintiff's Exhibit 1 during the testimony of Colette White-Amaro, Secretary to the Board and the Joint Board, and Abramson tendered another ballot which was received in evidence as Plaintiff's Exhibit 14. The difference between the two ballots is insignificant, however, and does not bear on the controversy. Both Plaintiff's Exhibit 1 and Plaintiff's Exhibit 14 contained one slate of candidates from the islands of St. Thomas and St. John, and directed the voter to select thirteen delegates from either island provided that not fewer than two delegates shall be residents of St. John.

that the Joint Board had revised the special election ballot. Daniel also admitted that on Thursday, June 7, he saw the revised ballot itself, which was published in the *V.I. Daily News* on that date. Daniel testified that although he read the headlines and captions of news items as early as June 4 and saw the revised ballot on June 7, he did not pay close attention to their contents and did not realize that the St. John-resident candidates had been separated from the St. Thomas-resident candidates on the revised ballot. Daniel testified that he wanted to vote for all five St. John resident candidates in the special election but believed that he was precluded from doing so, because of the restrictions in the revised ballot.

Daniel received 1,753 votes in the special election. This vote total placed Daniel third among the St. John resident candidates, and eighth overall. Thus, there is no dispute that Daniel would have been certified as an election winner but for his status as a resident of St. John, since he finished among the top thirteen in the District. On the morning of June 13, however, Daniel learned from reading a newspaper article that the Joint Board did not deem him a successful delegate because there could be no more than two delegates who are residents of St. John.

Daniel immediately challenged the Joint Board's decision. While in St. Croix on business on June 14, Daniel went to the elections office and registered a verbal challenge to the election results with Supervisor Abramson, who informed Daniel that his challenge should be made in writing. Upon his return to St. John the following day, June 15, Daniel submitted a letter to Abramson challenging the special election results. The Joint Board formally certified the election results on June 23. On July 2, Abramson met with Daniel to discuss his challenge to the official results. Abramson subsequently forwarded Daniel's election challenge to the Board, which after a formal hearing on July 10 denied Daniel's appeal and upheld the certified election results. Daniel's subsequent appeal to the Joint Board was denied on July 19, 2007. The same afternoon, Daniel filed this action in Superior Court.[2]

---

[2] Daniel originally sought to appeal to the Joint Board on July 11, 2007. This appeal was not acted upon initially, since the Joint Board was unable to obtain a quorum. Daniel filed suit in this Court on July 17, 2007, requesting a temporary restraining order, preliminary injunction and the identical relief requested in the instant action. The Court dismissed Daniel's action for failure to exhaust administrative remedies, because the Joint Board had not yet acted on Daniel's appeal.

After finding that Plaintiff would suffer irreparable harm in the absence of temporary injunctive relief, this Court issued a temporary restraining order on July 20, 2007, preserving the status quo by delaying the date for the swearing-in of the delegates until such time as a hearing could be held. The Court accepted evidence, heard live testimony from the parties and their witnesses, and heard arguments from counsel at a hearing on July 27, 2007, which due to the consolidation of the hearing on the merits and the preliminary injunction hearing, also served as the trial for this matter.

## DISCUSSION

### A. *Plaintiff's Action Is Partially Barred by the Doctrine of Laches*

In his application for injunctive or mandamus relief, Daniel challenges both the ballot that the Defendants used in the special election and the residency restriction imposed by Defendants after the votes were tabulated—specifically, the Boards' interpretation that a maximum of two delegates could be residents of St. John. Daniel objects to the format of the revised ballot as contrary to the intent of the Legislature because it essentially creates two separate election districts out of the single St. Thomas-St. John district. In addition, Daniel contends that the ballot revisions enacted at the June 2 Joint Board meeting were of no legal effect, because the Joint Board lacked the quorum of eight members required for performing official business pursuant to V.I. CODE ANN. tit. 18, §§ 41(h) and 47(13). Finally, Daniel argues that even if the ballot used in the special election is upheld, Defendants should be forced to seat him as one of the district's 13 delegates to the Fifth Constitutional Convention regardless of his residency in St. John, because he received the eighth highest vote total among all the candidates, and Act No. 6688 placed no upper limit on the number of delegates who could be elected from St. John.

Defendants' principal argument in opposition to Daniel's claims is that the Court should not hear the claims for relief because Daniel's action is barred by the doctrine of laches. The Court finds Defendants' laches argument persuasive, but only with respect to Daniel's challenge to the format of the special election ballot.

The preliminary issue that must be resolved related to the laches inquiry is when Daniel was put on notice—or should have been on notice—of the revised ballot. According to the testimony of Abramson, on

37

June 2, 2007, the same day of the Joint Board's decision to revise the St. Thomas-St. John portion of the ballot, an FM radio station broadcast a report regarding the ballot revisions. Daniel testified that on June 4 he read a headline in the *V.I. Daily News* entitled "Joint Boards of Elections orders revision of constitutional convention delegate ballot." The article explained that the ballot was being revised to have voters select two candidates from St. John. Although Daniel testified that he did not read this article (or subsequent articles) closely enough to determine that St. John resident candidates were to be listed on their own distinct slate or that voters would be restricted to vote for no more than two, it is reasonable to expect that Daniel, as a former member of the St. Thomas-St. John Board of Elections and a candidate for Constitutional Convention delegate, should have read the full content of articles relating to ballot revisions.

Daniel further admitted that he saw the revised ballot in the Voter Guide that was published in the *V.I. Daily News* on June 7, which featured instructions to voters to select no more than two St. John residents. Based upon this admission, Daniel and his counsel conceded at trial that as of June 7, 2007, Daniel had actual notice of the revised ballot.

Given this testimony, the Court finds that constructive notice of the revised ballot was provided as early as June 2, the date of the FM broadcast, and that Daniel had actual notice by June 7 *at the very latest*.[3] Daniel's actual notice on June 7 afforded him a minimum of five days before the special election, an adequate time in which to assert any challenge to the revised ballot. Abramson testified that within a week of an election his staff is available during ample weekend hours and on Election Day to handle any inquiries or challenges by the candidates. Notwithstanding this, Daniel did not assert any pre-election challenge to the revised ballot.

■ The first issue, then, is whether Daniel's waiting until after the election to assert his ballot challenge constitutes an unreasonable delay under these circumstances. In the context of an election challenge, the laches doctrine bars post-election relief when the party seeking such relief

---

[3] Based upon Daniel's admissions to the Court during his testimony, Daniel had actual notice of the revision of the ballot on June 4, 2007. However, even assuming that Daniel did not have actual notice of the ballot's revision until June 7, he had an adequate opportunity to mount a challenge to the revision before the special election.

has lacked diligence, and when the party asserting the laches defense will be prejudiced. *Golden v. Government of the Virgin Islands*, 2005 U.S. Dist. LEXIS 45967, *15 (D.V.I. Mar. 1, 2005) (citing *Costello v. United States*, 365 U.S. 265, 282, 81 S. Ct. 534, 5 L. Ed. 2d. 551 (1961)); *see generally Benoit v. Panthaky*, 780 F.2d 336, 339 (3d Cir. 1985). The Court must consider "the extremely disruptive effect of election invalidation and the havoc it wreaks upon local political continuity." *Id.* (citing *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1180 (9th Cir. 1988)). Thus, in election cases, complaints must be brought "expeditiously." *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990); *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980).

 As discussed, Daniel was well aware of the Joint Board's ballot revisions at least five days before the special election. Daniel did not exercise reasonable diligence by waiting to see whether he finished among the top two St. John candidates in the election results before asserting a challenge to the format of the revised ballot. The doctrine of laches bars such post-election "sandbagging on the part of wily plaintiffs." *Golden*, 2005 U.S. Dist. LEXIS 45967 at *15 (election challenge held barred by laches where lawsuit claiming that second Democratic seat should have been certified in primary was brought after election) (quoting *Soules*, 849 F.2d at 1180). "[T]he failure to require pre-election adjudication would permit, if not encourage, parties who could raise a claim to lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action." *Id.* Because Daniel had adequate notice of the ballot revisions and did not assert any challenge before the election, he is barred by the doctrine of laches from the equitable relief of invalidating the election ballot.

█ Defendants are clearly prejudiced by Daniel's lack of diligence in challenging the format of the revised ballot, because if Daniel succeeds in his belated ballot challenge, a new special election would have to be held at great cost to the Territory. Abramson testified at trial that the Joint Board spent more than $100,000 to conduct the special election in the St. Thomas-St. John district and that the government would have to expend at least that amount to hold another special election. In addition, the government would have to be closed for another election day. Thus, having found that Daniel lacked diligence and thereby caused prejudice to

the Defendants, the Court declines to reach the merits of Daniel's argument that the election ballot was contrary to law.

As for Daniel's contention that the revised ballot was never legally adopted by the Joint Board due to lack of a quorum, Defendants counter that the revisions to the St. Thomas-St. John portion of the ballot only required a quorum of the St. Thomas-St. John Board, and the requisite four members of this Board did approve the revisions on June 2. The Court declines to resolve this issue, however, because as discussed, it is too late for Daniel to assert a substantive challenge to the ballot revisions, and, therefore, Daniel's procedural challenge based upon the lack of a quorum by the Joint Board, is also barred.

Although laches bars Daniel's challenge to the ballot itself, it does not similarly thwart Daniel's challenge to the "residency restriction" that Defendants imposed *after* the election in identifying and certifying the winning delegates. Even after restricting voters from choosing more than two St. John residents, nothing would have prevented Defendants from certifying election winners based solely on the number of votes they received, regardless of their residency, if Defendants had so desired.

 Daniel did not delay in contesting the Board's refusal to certify him as a delegate after the election on June 12, 2007. Daniel met with Abramson on St. Croix on June 14, two days after the election, to lodge a verbal complaint regarding the ballot design and the election results. After being told by Abramson to document his challenge in writing, the following day Daniel sent a letter to the Board challenging its provisional certification of the winning candidates.[4] The election results were not officially certified until June 23, when Daniel's challenge was already pending within the elections system. Because Daniel diligently pursued all of his rights immediately upon learning that he was not to be seated as a delegate due to his status as a St. John resident, it necessarily follows that laches does not prevent Daniel from contesting the residency restriction that Defendants have imposed in their certification of the election results. In fact, Defendants have not asserted that Daniel sat on his rights or failed to lodge a timely challenge to the certification of election results. For these reasons, the Court finds that the doctrine of

---

[4] Candidates have seven working days after the Board of Elections issues its final report of the special election in which to file post-election challenges, although the provision explicitly refers only to petitions for a recount. *See* V.I. CODE ANN. tit. 18, § 629(a).

laches, although barring Daniel's challenge to the format of the revised ballot, does not similarly bar Daniel's challenge to the manner in which the Joint Board certified the election results.

Having found that laches does not bar Daniel's claim for relief from the certification of results, the Court will reach the merits of whether injunctive or mandamus-type relief is appropriate with regard to whether Daniel should have been seated as a delegate based upon his having received the eighth highest vote total in the St. Thomas-St. John district in the special election.

## B. *Plaintiff Has Demonstrated That He Is Entitled to Mandamus Relief Seating Him as a Delegate to the Fifth Constitutional Convention*

██ ██ This Court has the power to issue injunctive relief where a decision of the Board of Elections is challenged based on alleged disregard of a statute. *Goodwin v. St. Thomas-St. John Board of Elections*, 43 V.I. 89 (Terr. Ct. 2000). Mandamus-like relief, which has been identified by this Court as essentially an affirmative injunction, may be granted pursuant to V.I. CODE ANN. tit. 5, § 1361(a),[5] if Plaintiff can show the following: (1) a clear right in the plaintiff for the relief sought; (2) a plainly defined or peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available. *Id.* 43 V.I. 89, 97 (citing *Democratic Party of the Virgin Islands v. Board of Elections, St. Thomas-St. John*, 649 F. Supp. 1549, 1551, 22 V.I. 465 (D.V.I. 1986)). This Court concludes that if Daniel is to prevail, mandamus-like relief would be most appropriate because pursuant to their official duties, Defendants are compelled to seat Daniel as a delegate.

---

[5] Section 1361 of Title 5, which is entitled "Remedies formerly available by writ of mandamus to compel performance of duties"—

 (a) In an appropriate action, or upon appropriate motion in an action, under the practice prescribed in the Federal Rules of Civil Procedure and in this title, the district court may issue a mandatory order to any inferior court, corporation, board, officer, or person, to compel the performance of an act which the law *specifically enjoins as a duty resulting from an office, trust, or station.* Although such order may require the court, corporation, board, officer, or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, the order shall not control judicial discretion. The order shall not be issued in any case where there is a plain, speedy, and adequate remedy in the ordinary course of the law.

■ In determining whether Daniel has a clear right to the relief he seeks, the Court first looks to the statute involved, Act No. 6688. When interpreting a statute, the first step for the court is to determine whether the language at issue has a plain and unambiguous meaning. *Dobrek v. Phelan,* 419 F.3d 259, 263 (3d Cir. 2005). Because it is presumed that the legislature expresses its intent through the ordinary meaning of its language, "every exercise of statutory interpretation begins with an examination of the plain language of the statute." *Rosenberg v. XM Ventures,* 274 F.3d 137, 141 (3d Cir. 2001). Where the statutory language is plain and unambiguous, further inquiry is not required. *Id.*

■ Thus, in determining whether Daniel has a clear right to the relief he seeks, this Court must first address whether Defendants' interpretation of Act No. 6688 comports with the plain language of the statute. Defendants maintain that Daniel did not succeed in the election because a maximum of two delegates are permitted who are residents of St. John. This argument, however, contradicts the plain language of Act No. 6688, which directs that "**not fewer than two candidates**" shall be St. John residents (emphasis added). The Defendants appear to have misread the Legislature's term "**not fewer than**" to mean "**no more than.**" The two phrases are not equivalent, but are, in fact, the opposite of one another. Abramson testified at trial that he expressed his opinion to several members of the Joint Board that restricting voters to select no more than two St. John delegates violated Act No. 6688.[6] The Court agrees with Supervisor Abramson and finds that rather than setting a maximum number of delegates from St. John, the plain language of the statute indicates that the Legislature ensured that the voters would select a **minimum** number of delegates from St. John, with no maximum. Indeed, as Abramson and Daniel both testified, the law allowed voters to choose as many delegates as they wished who reside in St. John.

■ Defendants urge the Court to uphold their actions relating to both the certification of delegates and the revision of the ballot. Although Defendants contend that the certification merely expresses the intent of the voters, Defendants are under the mistaken impression that once they limited the voters to selecting two St. John candidates, the results of the election automatically had to be certified according to the same limits;

---

[6] As the Supervisor of Elections, Abramson is the servant of the Boards and does not have the authority to vacate or overrule any action taken by the Boards.

42

therefore, the arguments they make in favor of upholding the election certification are identical to those offered in support of upholding the design of the ballot. They offered the trial testimony of Lorna Thomas, a member of both the Board and the Joint Board, who stated that her intent in approving the ballot revisions on June 2 was to minimize voter confusion and to avoid the prospect of having the twelfth and thirteenth-place candidates from St. Thomas displaced by St. John candidates who received fewer votes. Ms. Thomas also testified that the decision to limit St. John residents to two delegate seats was in accordance with prior practice in previous elections. Whether or not this decision was based upon prior practice, the Joint Board's decision to certify no more than two delegates who reside in St. John contradicts the plain language of Act No. 6688. The statute clearly states that "not fewer than two" delegates were to be St. John residents. Despite Defendants' efforts to contort the phrase "not fewer than" to make it equivalent to "no more than," the two phrases are opposites, and the Defendants have misread the statute's clear language.

Where an agency's interpretation of a statute is plainly unreasonable in light of the plain language of the statute, the court need not defer to the agency interpretation. *Pinho v. Gonzales*, 432 F.3d 193, 207 (3d Cir. 2005) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)). Here, Defendants' interpretation of the statute directly contradicts its plain language with respect to the number of delegates permitted from St. John. I therefore find that Daniel has satisfied the first requirement for mandamus relief by showing that he has a clear right to be seated as a delegate because he received a sufficient number of votes in the special election.[7]

Notwithstanding the fact that Daniel has a clear right to be seated as a delegate, Defendants assert that it would be unfair to compare the number of votes he received to the number of votes received by St. Thomas candidates. Ms. Thomas testified that due to the ballot setup which

---

[7] In reaching this conclusion, the Court does not have to tabulate any votes. On the contrary, Defendants have already tabulated the number of votes received by each candidate and have concluded that Daniel received 1,753 votes, the eighth highest vote total among all candidates in the St. Thomas-St. John district. In concluding that Daniel could not be certified as a delegate because he would be the third candidate from St. John, Defendants acted in disregard of the plain language of the statute.

43

restricted the allocation of votes, comparing Daniel's vote total to that of the St. Thomas candidates would be, in her opinion, tantamount to comparing "apples to oranges." This argument is unavailing. The reality is that all parties to this action are left to determine the proper winners of the special election based on the votes that were actually cast on June 12. Act No. 6688 does not divide the delegates into separate St. Thomas and St. John districts, but rather contemplates that the voters in the district, which includes both islands, would vote for residents of either island without any limitation on the number of delegates from St. John. Thus, it is not like comparing apples to oranges. All were in the same barrel, and the voters could select any thirteen candidates they wished as long as two resided in St. John. At the end of the day, the best approximation of the intent of the voters who cast ballots on June 12 is the tally of votes that they actually cast.[8] The Court, therefore, rejects Defendants' contention that counting the 1,753 votes Daniel received and comparing them to the votes received by other candidates in the St. Thomas-St. John district who reside in St. Thomas frustrates the voters' intent.

■■■ As to the second element required for mandamus relief, whether there is a plainly defined or peremptory duty on the part of the defendant to do the act in question, Defendants here have a plainly defined statutory duty according to Virgin Islands law to certify the proper winners of the special election. Pursuant to V.I. CODE ANN. tit. 18, § 47(9), Defendants are required to compute election returns and certify the results within 15 days. Given the Court's reading of the plain language of Act No. 6688, it is appropriate to compel Defendants to exercise the ministerial act of certifying the winners of the June 12, 2007 special election, and to execute this duty as soon as possible without placing any upper limit on the number of delegates who reside in St. John.

■■■ Finally, Daniel has no other adequate remedy available. Without mandamus relief, Daniel will be denied the opportunity to participate as an elected delegate in the Fifth Constitutional Convention. It is beyond cavil that the outcome of the June 12 special election is extremely important to the people of the Virgin Islands. Given the public's strong interest in the resolution of this matter, the Court has proceeded carefully

---

[8] Furthermore, it is somewhat ironic that Defendants, who urge this Court to uphold the revised ballot as valid, argue in the same breath that the voters' intent would be violated by accurately counting the votes that were cast by the voters pursuant to the very same ballot.

and as expeditiously as possible in an attempt to ensure that all parties were afforded the opportunity to fully air their arguments in a public forum. Indeed, as this Court has previously stated, the people have a fundamental right to ensure that the crucial work of the Convention is carried out by the delegates whom they duly elected to serve in that capacity. As Abramson testified, the delegates who participate in the Fifth Constitutional Convention may well be known to future generations as the "founding Fathers" of the Virgin Islands. Daniel's right to be seated as a delegate to this Constitutional Convention is, therefore, so precious that no financial remuneration or other relief could adequately compensate Daniel for deprivation of his taking a seat as a duly elected delegate.

Having found that Daniel has demonstrated a clear right to mandamus relief, that Defendants have a plainly defined statutory duty to certify him as an election winner, and that no other adequate remedy is available to him, it is hereby

ORDERED that Plaintiff's Motion for Mandamus Relief is GRANTED; and it is further

ORDERED that pursuant to Act No. 6688, Defendants shall immediately certify the successful candidates for delegate to the Fifth Constitutional Convention according to the number of votes they received in the June 12 special election, without placing any upper limit on the number of St. John resident delegates; and it is further

ORDERED that Defendants shall swear in, or cause to be sworn in, these same delegates forthwith, so that the Fifth Constitutional Convention may be convened as soon as possible; and it is further

ORDERED that Plaintiff's Motion for Preliminary Injunction and Declaratory Judgment is DENIED as moot; and it is further

ORDERED that copies of this Memorandum Opinion and Order shall be personally served on Attorney Clive Rivers; Vincent Frazer, Attorney General of the Virgin Islands; John Abramson, Jr., Supervisor of Elections; Alecia Wells, Chairperson of the Virgin Islands Joint Boards of Elections; and the President of the Legislature of the Virgin Islands.