**DEMOCRATIC PARTY OF THE VIRGIN ISLANDS,**
Plaintiffs
and
**EDGAR ILES, GAYLORD SPRAUVE, ELMO JACOBS, WILLIAM HARVEY, CLEONE CREQUE MAYNARD** and **DAVID PURITZ,** Involuntary Plaintiffs

v.

**BOARD OF ELECTIONS, ST. THOMAS-ST. JOHN** and **BOARD OF ELECTIONS, ST. CROIX,** Defendants

Civil No. 1986/544

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 30, 1986

BERNARD M. VANSLUYTMAN, ESQ., St. Thomas, V.I., *for plaintiffs*

ROSALIE BALLENTINE, ESQ., Assistant Attorney General (Department of Law), St. Thomas, V.I., *for defendants*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

The Democratic Party of the Virgin Islands seeks either an injunction or a writ of mandamus to require the separate Boards of Election of the Virgin Islands to count ballots from the recent election, which the boards ruled were spoiled. Certain Democratic candidates for the Virgin Islands Legislature, who would ostensibly gain votes and perhaps even elective office if the relief were granted, are named as involuntary plaintiffs. None of them were among the persons certified as winners.

## I. STATEMENT OF FACTS

The general election in the Virgin Islands was held on November 4, 1986. At that time, from a single ballot, electors selected a governor and lieutenant governor, an at-large member of the Legislature, and seven additional members of the Legislature respectively from the St. Thomas-St. John District or the St. Croix District. Other elective positions not part of this case included, on other ballots, members of the Board of Education and Board of Elections, and the delegate to the United States House of Representatives.

As is well known in the territory, electors have the right to vote for every candidate of a political party by marking the ballot next to the symbol of that party. 18 V.I.C. § 584(c)(2). By making such a mark, each of the party's candidates receives a vote. If that is the elector's desire, he or she should not mark the ballot further, and especially, he or she should not mark the ballot for any candidates opposing the party slate chosen. The only exception to this rule is where the number of candidates on the party slate are fewer than the positions to be filled, in which event, an elector may select from other candidates to fill out the remaining positions. 18 V.I.C. § 584(c)(5).

The Boards of Election in the territory took the unequivocal position that the entire ballot of an elector was deemed as spoiled in the event either of the following two circumstances occurred:

(1) If the elector marked the box for a party symbol but then proceeded to mark the ballot for an at-large candidate for the Legislature who was not a candidate of that party; or

(2) If the elector marked the box for a party symbol but then proceeded to also mark the box for various district candidates for the Legislature who were not candidates of the party favored and which, when added to the total of the party's candidates for member of the Legislature from that district, resulted in voting for more than seven candidates.

Thus, not only did the Boards of Election consider the ballot invalid for the offices listed under either of the circumstances above, but the vote for the other offices unaffected by the elector's action were treated as invalidated as well. No rules or regulations had been issued delineating this position, although it was partially spelled out by an opinion of the Attorney General.

The total number of ballots which the Board of Election treated as spoiled amounted to 1,378, most of them as the result of the mistakes described above. Since about 27,000 persons voted, it would appear that approximately five percent of those persons who took the time to vote at the general election did not have their votes counted for any of the positions on that particular ballot. This appears to be an exceptionally high proportion of the total vote compared to states and communities elsewhere.

## II. RELIEF SOUGHT

The plaintiffs contend that the Boards of Election erred as a matter of law in deciding that the entire ballot would be treated as spoiled. They ask us to grant either injunctive relief or a writ of mandamus to compel the election authorities to count the party symbol votes in favor of the designated Democratic candidates for the Legislature except in the two instances described earlier. In other words, the plaintiffs argue that the positions up for election listed on the same ballot, where the intention of the elector is clear, should not be affected by the elector's mistake in the manner in which he or she voted for another position.

The granting of such relief would require the Boards of Election to re-canvass and count the ballots set aside as spoiled, and alter the results already announced, if necessary. To that end, the plaintiffs seek to have us take an extraordinary step, i.e., to prevent all members of the Legislature from taking their oaths of office until this procedure is completed and the winners officially notified.

The defendants also argue a lack of standing on the part of the plaintiffs. We agree as to the individual plaintiff Marilyn Stapleton, and will dismiss as to her. The Democratic Party of the Virgin Islands and the involuntary plaintiffs clearly have standing in this particular law suit.

## III. APPLICABLE LAW

### A. *Injunction and Mandamus*

■ Injunction and mandamus, while similar, have separate characteristics. Mandamus-like relief is essentially an affirmative injunction and may be granted pursuant to 5 V.I.C. § 1361(a) (1967) which provides:

§ 1361. Remedies formerly available by writ of mandamus to compel performance of duties

(a) In an appropriate action, or upon an appropriate motion in an action, under the practice prescribed in the Federal Rules of Civil Procedure and in this title, the district court may issue a mandatory order to any inferior court, corporation, board, officer or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. Although such order may require the court, corporation, board, officer, or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, the order shall not control judicial discretion. The order shall not be issued in any case where there is a plain, speedy, and adequate remedy in the ordinary course of the law.

Courts in the Virgin Islands have long viewed mandamus as "an extraordinary remedy [that] should only issue if there are no other means of vindicating rights." Weems v. Petersen, 19 V.I. 212, 214 (D.V.I. 1982) (citations omitted). Three elements are required: "(1) a clear right in the plaintiff for the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." Richardson v. Virgin Islands Housing Authority, 18 V.I. 351, 356 (D.V.I. 1981).

■ In the case at hand, we believe that if plaintiffs are entitled to prevail, mandamus relief would be appropriate, since we would be in a difficult position to shape any injunctive relief which would result in a solution to the problem. This is because the Boards of Election have already certified the results of the election and there

469

is nothing left to enjoin as to them. Therefore, the affirmative relief of mandamus is more appropriate. In this, we follow other jurisdictions where post-election challenges are generally decided by mandamus actions. Mahoney v. Board of Supervisors of Elections, 109 A.2d 110 (C.A. Md. 1954).

## IV. DISCUSSION

The electoral history of the Virgin Islands is replete with challenges to the results. The issue of how to treat ballots spoiled by mismarking as to one race, vis a vis other races on the same ballot, has come up several times. Although past precedent is helpful to us to some extent, the pertinent sections of Title 18 V.I. Code (the Election Law) were amended in 1984, subsequent to these decisions.

Chief Judge Almeric L. Christian held in Boschulte v. Todman, Volume II, 1982 St. Thomas Supp. — (Civ. No. 82/280) rev'd on other grounds, Appeal Nos. 82/3530 and 82/3533 (3d Cir. 1982), that under then prevailing law:

> One class of submitted ballots is consigned by 18 V.I.C. § 492(a) . . . to total invalidity. Those ballots on which the choice of a party symbol is made as well as any selection in any of the three sections therein which is inconsistent with the symbol choice, results in invalidation of the entire ballot and all choices made regardless of whether they are intelligible or not . . . (footnote 10)

Chief Judge Christian based this holding on the express language of § 492(a) which, in describing the ballot for the general election, required the following instructions to be placed on the ballot before the party symbol:

> DO NOT MARK MORE THAN ONE SQUARE UNDER THE PARTY COLUMN. MARKING MORE THAN ONE SQUARE IN THE PARTY COLUMN WILL INVALIDATE THE BALLOT.

Further, § 492(a), in describing the instructions to be given for splitting the ticket, contained the following:

> IN SUCH CASE, DO NOT MAKE ANY MARK IN THE PARTY COLUMN OR THE BALLOT WILL BE INVALI-DATED.

470

Chief Judge Christian interpreted this language as mandating that the entire ballot be invalidated, if any mistake was made in marking any portion of the ballot.

In 1984, however, § 492(a) was amended, and the sample ballot described therein dropped all language stating the ballot would be invalidated by any mistake in the marking. The voter was only given instructions how to mark the ballot with no mention of the ramifications of any mistake. The Election Law in 1986 contained none of the entire ballot invalidation language cited by Chief Judge Christian in 1982.

The Election Law was also amended in 1984 to clearly permit electors to vote the party symbol and, where the party failed to field a complete slate for a position, to also vote for nonparty candidates to complete the slate. This was accomplished by adding a new subsection five to 18 V.I.C. § 584(c).

The 1984 changes to Title 18, i.e., the Election Law were designated "The Election Law Reform Act of 1984". They were embodied in Act No. 4934 finally approved May 3, 1984. In actuality, the changes contemplated a shift from paper ballots to electronic voting, and the language of the 1984 revisions is couched in the language of electronic voting. But in Section 21 of the Reform Act of 1984, provision was made that if electronic voting was not to take place, "the election process heretofore existing in this title, shall be reinstituted as provided in Title 18, Virgin Islands Code."

The election officials interpreted this savings clause as requiring the return to paper ballots, but not the express language of the ballot described earlier in § 492(a) which had been the subject of Chief Judge Christian's ruling in Boschulte v. Todman, supra, with the mandatory language of total ballot invalidation.

Rather, in 1986 the election officials used the ballot language of the new § 492(a) as contained in the Election Reform Act of 1984. This language contained no statement that a mismarked ballot would be totally invalidated, nor did any rule or regulation of the election officials require invalidation.

There is one subsection of the Election Law, however, whose language has remained constant since 1963, even surviving the 1984 revisions. 18 V.I.C. § 584(d) reads:

471

(d) In any case of doubt or conflict, the marking of the ballot shall be deemed to be valid in such a way that wherever the intention of the voter appears, although the marking may be defective, the ballot shall be deemed to be valid, and such intention shall be given effect.

■■ There can be no question then, that the intention of the elector must be paramount. Neither a regulation of the Board of Elections, nor a decision of the supervisor of elections, can supercede the requirement that where the elector's intent can be divined, it should be given effect. This is, after all, a widespread law in the various states. Kane v. Registrar of Voters of Fall River, 105 N.E.2d 212, 216 (S.J.C. Mass. 1952), put it this way:

> In the construction of the election laws the principle running through our decisions is that the will of the voters, if it can be determined with reasonable certainty, must be given effect. If the ballot, considered in the light of the character and location of the mark and conditions attendant upon the election, fairly indicates the voter's intent, the vote should be counted with that intent, provided the voter has substantially complied with the requisites of the election law. The voter is not to be disenfranchised because of minor irregularities. (Citations omitted.)

In that respect we note the clear language of the decision by Chief Judge William Hastie of the Third Circuit, in Melchior v. Todman, 296 F. Supp. 900, 7 V.I. 583 (D.V.I. 1968). Chief Judge Hastie, who was a former governor of the Virgin Islands before he became the much respected chief judge of our circuit, was sitting as District Court judge to hear Melchior. In a brief but succinct opinion, he spelled out clearly how Virgin Islands election officials should treat situations such as we confront in this case:

> This does not prevent a straight party ballot, which is defective only in connection with the vote for Senators resident in St. Thomas, from being a valid vote for the party nominees for the offices of Senator-at-large, Senator resident in St. John and Washington Representative, all of which also appear on the ballot.

■■ Ironically, though not even cited in the annotations to the Virgin Islands Code, Title 18, Chief Judge Hastie's holding has been quoted in other jurisdictions. See Hendon v. North Carolina State Bd. of Elections, 710 F.2d 177, 181 (4th Cir. 1983). The proposition

472

he cites is the most commonly held where paper ballots are in widespread use. It is this: a ballot improperly marked as to one office is not void as a whole, but only to the office for which the mistake was made. Wade v. McKibben, 78 N.E.2d 148 (S.C. Ind. 1948). A ballot should only be voided if it is impossible to determine a voter's intention. Steel v. Meek, 226 S.W.2d 542, 543 (C.A. Ky. 1950).

Chief Judge Hastie was interpreting a 1968 Virgin Islands election law which contained none of the provisions for ballot invalidation which were the subject of Chief Judge Christian's decision in Boschulte v. Todman, supra in 1982. The election law Chief Judge Hastie dealt with was adopted in 1966. See 1966 Session Laws, Act No. 1815, p. 490 et seq.

With no mandatory invalidation provisions facing Chief Judge Hastie in 1968, the situation is precisely the same that we confront in the Election Law as of November 4, 1986. That is, the law as of 1986 also contains no invalidating provisions if an elector makes a mistake as to one portion of the ballot. For that reason, Chief Judge Hastie's language in his 1968 decision has equal force today, and we adopt it.

■ An elector who is presented with a ballot containing sections for three sets of offices, who fails to follow the instructions as to one of the offices, has certainly still demonstrated his or her voting intent as to the others, where no mistake in marking was made with respect to them. Therefore, the only part of the ballot which should be treated as spoiled is that for the office where the mistake was made. This is the law across the land where paper ballots are used.

■ ■ The purpose of a review by a court of actions of election officials is not to match the court's judgment against that of the officials. Rather, when a ballot is sufficiently plain to gather part of a voter's intention therefrom, the duty of election officials is to count such part. A failure to do so is not a mistake of judgment, which should not be set aside by a court, but a mistake of law. State v. Clark, 182 P.2d 68, 72-74 (S.C. Wash. 1947).

## V. CONCLUSION

■ We find that the Boards of Election erred as a matter of law in refusing to count spoiled ballots for those parts of the ballot where the elector's intent is clear. We will issue a writ of mandamus directing the Boards of Election to re-canvass the

473

ballots which it deemed spoiled, such re-canvass to be based on the principle that a ballot improperly marked as to one office is not void as a whole but only to the office for which the mistake was made. After a re-canvass, the Boards of Election will recertify the results and appropriately notify the winners pursuant to Chapter 23 of Title 18, Virgin Islands Code.

We decline to enjoin the taking of the oath of office of any person elected to the Legislature, first, because the Legislature is obviously not a party to this action, and second, because we believe it would unnecessarily impinge upon the authority of the Legislature itself to direct its manner of organization. We only point out that our writ of mandamus will require that the re-canvass take place, and the notifications sent out, prior to January 12, 1987, when the new Legislature is scheduled to meet and organize.

Since the new Legislature will have the official recertification, and those affected candidates will have received their official notifications, the Legislature, in organizing, will be able to permit the oath-taking by its full complement of fifteen members as certified by election officials. If an appeal is taken from this decision, it will be up to the new Legislature to decide whether a member whose position is still under contest by reason of the appeal, should be seated.

The provisions of § 6(g) of the Revised Organic Act of 1954 would seem to apply in this instance, wherein it states:

> (g) The legislature shall be the sole judge of the elections and qualifications of its members . . . .

## WRIT OF MANDAMUS

THIS MATTER came before the Court on application of the plaintiffs for a writ of mandamus. A hearing was held on Monday, December 29, 1986. The Court having heard the parties, and having filed its memorandum opinion of even date herewith, now therefore it is

ORDERED:

THAT the Boards of Election of St. Thomas-St. John, and of St. Croix, re-canvass the ballots cast at the general election of November 4, 1986, and count ballots previously deemed spoiled according to the principle that a ballot improperly marked as to one office is not void as a whole, but only to the office for which the mistake was made; and

THAT upon the re-canvass of ballots, the Boards shall certify the results and notify the winners, and take appropriate action, pursuant to Chapter 23 of Title 18, Virgin Islands Code, and file a copy of its re-certification with the Court, within ten (10) days of the completion of its re-canvass; and

THAT the re-canvass be completed and actions taken pursuant to Chapter 23, Title 18, Virgin Islands Code, prior to January 12, 1987; and

THAT, the complaint as to Marilyn Stapleton is DISMISSED, WITH PREJUDICE.