**ADLAH DONASTORG, JR., Taxpayer, Plaintiff**

**v.**

**THE GOVERNMENT OF THE VIRGIN ISLANDS ACTING THROUGH ITS EXECUTIVE DEPARTMENTS AND AGENCIES AND ITS COMMISSIONERS AND DIRECTORS; ROY L. SCHNEIDER, and his successor(s) GOVERNOR OF THE UNITED STATES VIRGIN ISLANDS, JUAN CENTENO, and his successor(s) COMMISSIONER OF THE DEPARTMENT OF FINANCE, JOSEPH AUBAIN, and his successor(s) DIRECTOR OF THE BUREAU OF INTERNAL REVENUE, NELLON BOWRY, and his successor(s) DIRECTOR OF MANAGEMENT AND BUDGET, Defendant**

Civil No. 20/1998

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

June 24, 2003

RICHARD PENDERGRAST, ESQ., V.I. Department of Justice, St. Thomas, VI

HENRY C. SMOCK, ESQ., St. Thomas, VI

HOLLAR, *Judge*

## MEMORANDUM OPINION

(June 24, 2003)

This matter is before the Court on a complaint filed by Adlah Donastorg, Jr., ("Plaintiff"), for declaratory judgment against the Government of the Virgin Islands and its various offices, departments and agencies to interpret V.I. CODE ANN. tit. 33, § 1102(b) and a petition for writ of mandamus to enforce the aforementioned statute. In response

to the complaint, the Government of the Virgin Islands, through its named executive departments, agencies, commissioners and directors, moved pursuant to FED. R. CIV. P. 12(b)(6) to dismiss the plaintiff's action. The plaintiff responded to the defendants' motion to dismiss with an opposition and a supplemental memorandum. The Government replied. For reasons that follow, the Government's motion to dismiss shall be denied.

## I. FACTS AND PROCEDURAL HISTORY

In response to the plaintiff's January 9, 1998 complaint for declaratory judgment and *petition or application* for writ of mandamus,[1] the Government filed a motion to dismiss on March 5, 1998, alleging *inter alia* that the plaintiff lacked standing since he failed to allege any injury, which would affect him personally.

On March 17, 1998, the Plaintiff filed an opposition to the motion to dismiss, asserting that he indeed has standing as a taxpayer as a matter of law. Additionally, the plaintiff alleged that by the Government's failure to comply with the applicable law, he suffered sufficient injury to create standing to sue. The Government replied on April 29, 1998 to the Plaintiff's opposition.

The Court heard oral arguments on the Government's motion to dismiss on June 1, 1998. At the end of oral argument, the Court ordered the Government to supply the Court with authority on why a taxpayer cannot file a declaratory action and the impact of the, then existing Governor's emergency powers invoked as a result of the Hurricane Marilyn disaster, on V.I. CODE ANN. tit. 33, § 1102(b).[2] On October 5, 1998, the Court ordered further clarification of the parties' current interpretation of V.I. CODE ANN. tit. 33, § 1102(b) which provides as follows:

> (b) The Director of the Bureau of Internal Revenue shall maintain in the general ledger of the General Fund in the Treasury of the Virgin Islands an account to be designated the Reserve for Internal

---

[1] The plaintiff filed an *action* for a writ of mandamus, the proper vehicle however is to seek a *petition or application* for a writ of mandamus.

[2] The Governor's emergency powers are set forth at V.I. CODE ANN. tit. 23, § 1125, particularly subsection (c) and (f)(2) permitting the Governor's utilization of all available resources of the Territory.

Revenue Tax Refunds. There shall be credited directly to such reserve account monthly *not less than 10 percent* of the receipts from *income tax* collections. The refunds or credits administratively granted under subsection (a) of this section shall be paid or credited by the Director of the Bureau of Internal Revenue, without the necessity for annual appropriation and shall be chargeable to the reserve account. V.I. CODE ANN. tit. 33, § 1102(b). (2003 Supp.).

The original statute was enacted on *February 20, 1964,* and read:

(b) The *Commissioner of Finance* shall maintain in the general ledger of the General Fund in the Treasury of the Virgin Islands an account to be designated the Reserve for Internal Revenue Tax Refunds. There shall be credited directly to such reserve account monthly *not more than 3 percent* of the receipts from internal revenue collections. The refunds or credits administratively granted under subsection (a) of this section shall be *paid or credited by the Commissioner of Finance,* without the necessity for annual appropriation and shall be chargeable to the reserve account. V.I. CODE ANN. tit. 33, § 1102(b) (1964).

The original legislation authorized and/or required the *Commissioner of Finance* (hereinafter "Commissioner"): (1) to credit or refund internal revenue taxes referred to in § 1102(a); (2) to pay or credit tax over-payments without the necessity for an annual appropriation; and (3) to credit a percentage of receipts from the internal revenue collections to the reserve account.

The internal revenue taxes were defined as "any tax imposed by this subtitle (except the tax imposed by chapter 7 of this title), and the Virgin Islands income tax law. *See* V.I. CODE ANN. tit. 33 § 1931(7). Prior to the 1980 and the inception of the Bureau of Internal Revenue, powers and duties of the Department of Finance included, but were not limited to superintending and regulating the collection of *all revenue. See* V.I. CODE ANN. tit. 3 § 177(a)(2).

*In 1980,* however, the Virgin Islands Bureau of Internal Revenue ("IRB") was created with the passage of Act No. 4473, § 2, Sess. L. 1980, which provided in part:

There is hereby created the Virgin Islands Bureau of Internal Revenue (hereinafter referred to as the Bureau) *as a separate*

*independent agency of the Government of the United States Virgin Islands*, which, for budgetary purposes only, shall be included under the Office of the Governor. V.I. CODE ANN. tit. 33, § 680(a)

With the creation of the "IRB", V.I. CODE ANN. tit. 33, § 1102, enacted February 20, 1964,[3] as previously quoted was effectively amended by substituting "Director of the Bureau of Internal Revenue" ("Director"), for "Commissioner of Finance", and raising the minimum amount to be set aside in a reserve account. So as of 1980, V.I. CODE ANN. tit. 33, § 1102(b) read:

> (b) The *Director of the Bureau of Internal Revenue* shall maintain in the general ledger of the General Fund in the Treasury of the Virgin Islands an account to be designated the Reserve for Internal Revenue Tax Refunds. There shall be credited directly to such reserve account monthly *not less than 4.5 percent* of the receipts from *internal revenue* collections. The refunds or credits administratively granted under subsection (a) of this section shall be paid or credited by the *Director of the Bureau of Internal Revenue*, without the necessity for annual appropriation and shall be chargeable to the reserve account. V.I. CODE ANN. tit. 33, § 1102(b).

*In 1986*, the Commissioner of Finance was assigned the duty of creating a reserve for *other taxes and license refunds*. V.I. CODE ANN. tit. 3 § 179(b) (hereinafter "§ 179(b)"). "Other taxes" is defined as "all taxes other than income taxes" *Id.* § 179(a). This created an overlap of duties between the Commissioner of Finance and Director of the Bureau of Internal Revenue[4] that existed at the time of commencement of this action and continued until the Legislature again amended § 1102(b) *in 1999*, to limit the reserve fund collected by "IRB" to income tax(es).[5]

---

[3] *See infra* Part I. p. 3.

[4] Internal revenue taxes were the sole responsibility of the Director, stamp taxes were the responsibility of the Commissioner and all other internal revenue taxes were in both reserve accounts.

[5] In 1998, the plaintiff, in his capacity as Senator, introduced legislation to amend § 1102(b) by Act No. 6191, § 2 Sess. L. 1997 to substitute "10" for "4.5" in the second sentence of subsection (b). In 1999, § 1102(b) was once again amended to substitute "income tax" for "internal revenue" preceding "collections" at the end of the second sentence in subsection (b).

On December 24, 1998, the Government filed a supplemental memorandum of law in support of its motion to dismiss, alleging *inter alia,* that the complaint/petition essentially failed to state a cause of action upon which relief could be granted. Plaintiff responded to the supplemental memorandum on February 5, 1999. Oral arguments were again heard on February 9, 1999, after which the Court took the matter under advisement and granted Plaintiff leave to amend the complaint/petition.

## II. STANDARD(S) OF REVIEW

In addressing a motion to dismiss based on failure to state a claim upon which relief can be granted, the Court views all factual allegations in the complaint as true and must construe the complaint liberally. *See Callender v. Nichtern,* 32 V.I. 96, 99 (Terr. Ct. 1995). In order for the Court to grant the motion, it must appear to a certainty that the claimant would be entitled to no relief under any statement of facts that could be proved in support of the claim. *Id.; Joseph v. United Dominion Constructors,* 30 V.I. 220, 221 (D.V.I. 1994). A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The Court's task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974).

Generally, in filing a motion to dismiss, the parties are allowed to go beyond the question of the complaint's formal sufficiency and introduce matters outside the pleadings to aid in the determination of whether there is any merit to the claim. The addition of matters outside the pleadings may trigger the Rule 12(b)(6) motion to be converted to a Rule 56 motion for summary judgment. *Ferris v. V.I. Industrial Gases, Inc.,* 23 V.I. 183 (D.C.V.I. 1987). In certain situations, however, conversion may occur even though neither party has introduced extra-pleading matter. *See General Guar. Ins. Co. v. Parkerson,* 369 F.2d 821

(5th Cir. 1966).[6] Courts have held that materials filed concurrently with the pleadings are sufficient to convert the motion to dismiss. *See Kron v. First Federal Savings & Loan Association of Hatttiesburg*, 449 F.2d 865 (5th Cir. 1971). To convert a motion to dismiss, the Court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion. *See Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988) (quoting WRIGHT AND MILLER). A conversion will be considered, if the matters outside the pleadings are sufficient to enable a rational determination of a summary judgment motion and if the resulting conversion is likely to facilitate the disposition of the case. *See Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186 (5th Cir. 1988) (quoting WRIGHT AND MILLER).

Some courts have held that only items detailed in Rule 56(c) constitute "matters outside the pleading", sufficient to trigger a conversion. Rule 56(c) states that depositions, answers to interrogatories, admissions on file and affidavits sufficiently qualify as matters outside the pleading to trigger conversion. Most courts however, include any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for what is stated in the pleadings. Not included in "matters outside the pleadings" are memoranda of points and authorities as well as briefs and oral arguments. *See Sardo v. McGrath*, 90 U.S. App. D.C. 195, 196 F.2d 20 (D.C. Cir. 1952).

In the present action, neither party has filed any material that might be construed as matters outside the pleading. The complaint/petition concerns the failure of the defendant to comply with a statute. The original motion to dismiss addressed the plaintiff's lack of standing to sue. Neither the complaint/petition nor the motion to dismiss contains any affidavits or matters outside the pleadings. In the supplemental memorandum of law in support of their motion to dismiss, the defendants discussed, in addition to the standing issue, a claim that the statute at issue was vague and ambiguous. That memorandum qualifies as a brief and consequently does not constitute matters outside the pleadings to aid in the determination of claim. In fact, none of the materials offered by

---

[6] *General Guardian, supra*, involves a contract dispute in which the plaintiff attached a copy of the contract in controversy, triggering a conversion to a summary judgment.

the parties qualify as matters outside the pleadings. As such, the motion to dismiss may not be converted into a summary judgment.

## II. ANALYSIS

The issues before the court for resolution are: (1) whether the plaintiff has standing; (2) whether V.I. CODE ANN. tit. 33 § 1102(b) is vague and unambiguous and as such, void and unenforceable; (3) whether V.I. CODE ANN. tit. 33 § 1102(b) assigns duties to the Director of the Internal Revenue Bureau that are susceptible to the issuance of a mandamus.[7]

### A. Plaintiff Has Standing

The defendants maintain that the plaintiff lacks standing to prosecute this case because he has failed to meet the three-prong test, pursuant to *Sierra Club v. Morton*, 405 U.S. 727, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972). Under *Sierra*, the plaintiff must show: (1) a concrete injury in fact; (2) a connection between the alleged injury in fact and the alleged conduct of the defendant; and (3) a substantial likelihood that the requested relief will remedy the alleged injury in fact. *See Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 771, 120 S. Ct. 1858, 1861-1862, 146 L. Ed. 2d 836 (2000), *cited in Environmental Association of St. Thomas and St. John, et. al. v. Department of, Planning and Natural Res. et al.*, 44 V.I. 218 (Terr. Ct. 2002). The plaintiff responds by contending that V.I. CODE ANN. tit. 5, § 80 gives all taxpayers standing without the need to demonstrate compliance with the *Sierra Club* standing test. V.I. CODE ANN. tit. 5, § 80 states:

> "A taxpayer may maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful disbursement of territorial funds."

Standing is a doctrine of justicibility. Courts must determine whether a plaintiff has a sufficient stake in the outcome of a suit before reaching the merits of the case. The defendants argue that this standing

---

[7] In its memorandum in support of its motion to dismiss, the Government expounds upon its interpretation of the statute in controversy, V.I. CODE ANN. tit. 33 § 1102(b). At this time, the Court will not rule on the interpretation of the statute, since an answer to the complaint has yet to be filed, but the Court will address the issues germane to the motion to dismiss.

requirement is constitutional in nature and thus, regardless of 5 V.I.C. § 80, the plaintiff's allegations must meet the *Sierra Club* test. The plaintiff argues the constitution does not mandate the standing test in this forum and is only a judge-made rule of prudent judicial administration.

The defendants further rely on *Julien v. Government of the Virgin Islands*, 961 F. Supp. 852, 36 V.I. 165 (Terr. Ct. 1997) for the proposition that taxpayers' suits must conform with the *Sierra Club* test. In *Julien*, the plaintiff sought an injunction against the confirmation of the members of the Casino Control Commission because the Government allegedly failed to advertise vacancies for positions on that board, pursuant to 3 V.I.C. 65b. The Appellate Division ruled that *Julien* did not have standing because he did not plead a particularized injury and thus failed to meet the *Sierra Club* test.

*Julien* neither invoked, nor considered, 5 V.I.C. § 80 as a basis for jurisdiction[8] in deciding that he did not have standing. Accordingly, the *Julien* court did not rule on whether 5 V.I.C. § 80 abrogates the *Sierra Club* standing requirements.

Emphasizing the ruling in *Julien*, the defendants asserted that "irreducible constitutional minimum of standing contains three elements [as stated in *Sierra Club*]." *Julien* at 172; *quoting Lujan v. Defenders of the Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). However, Justice Scalia, writing for the plurality in *Lujan* wrote, "Though some of its elements express merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the *case-or-controversy requirement of Article III* [of the United States Constitution]". (Emphasis added). It is the case-or-controversy language of Article III that serves as the textual basis for holding that the *Sierra Club* test is a constitutional requirement. Article III grants jurisdiction over certain types of cases and controversies to courts established under that article. U.S. CONST. ART. III, § 2. In order to hear a "case" or "controversy," an Article III court must find that the plaintiff alleges injury in fact, as well as the other *Sierra Club* elements. Neither the District Court of the Virgin Islands nor the Territorial Court are Article III courts and are thus not bound by the

---

[8] While Julien did state in his complaint that he was a taxpayer in the Virgin Islands, he did not assert that as a basis for jurisdiction and the Appellate Division made no consideration of 5 V.I.C. § 80. The Court notes that Julien was a *pro se* litigant.

requirements of an Article III Court. Instead, this Court's jurisdiction stems from the Revised Organic Act of 1954 (as amended) 48 U.S.C. § 1611(b) (2002)[9] and, ultimately, from U.S. CONST. ART. IV, § 3, cl. 2, which states in pertinent part that, "The Congress shall have *Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States*." Ergo, the Territorial Court is not subject to the constitutional strictures of an Article III court. There is no language in either Article IV of the Constitution or the Revised Organic Act that would limit the jurisdiction of the Territorial Court to 'cases or controversies.' In fact, 48 U.S.C. § 1611(b) states in pertinent part, "The legislature of the Virgin Islands may vest in the courts of the Virgin Islands established by local law jurisdiction over *all causes* in the Virgin Islands ... ." (Emphasis Added) This language does not include a standing requirement.

Nevertheless, this Court has adopted the standing requirements of the *Sierra Club* test as part of its jurisprudence. *See, Environment Association v. Department of Planning*, 44 V.I. 218 (Terr. Ct. 2002) (holding that absent a "statutory conferral" of standing, a plaintiff must meet the *Sierra Club* test for standing). However, this judge-made requirement of standing can be set aside by an act of the Legislature.[10] Several states, like the Virgin Islands, have adopted statutes that confer standing by virtue of the plaintiff's status as a taxpayer. *See, e.g.*, N.Y. FIN. LAW § 123-b (2002)[11]; CAL. CIV. PROC. CODE § 526(a) (2002).[12]

---

[9] 48 U.S.C. § 1611(b) in pertinent part states:

> The legislature of the Virgin Islands may vest in the courts of the Virgin Islands established by local law jurisdiction over *all cases* in the Virgin Islands over which any court established by the Constitution and laws of the United States does not have exclusive jurisdiction. (Emphasis Added)

[10] *See* ERWIN CHEMERINSKY, FEDERAL JURISDICTION, § 2.1 (3rd Ed. 1999) (stating that Congress can legislatively eliminate standing requirements that are not mandated by the Constitution), *citing Warth v. Seldin*, 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); *see also* 74 AM. JUR. 2d *Taxpayers' Actions* § 10 ("*Unless standing is conferred by statute*, taxpayers generally must show as a rule that they have suffered a particularized injury distinct from that suffered by the general public in order to have standing to challenge a government action or assert a public right." (emphasis added)).

[11] N.Y. FIN. LAW § 123-b states in pertinent part:

> Notwithstanding any inconsistent provision of law, any person, who is a citizen taxpayer, *whether or not such person is or may be affected or specially aggrieved*

The Legislature of the Virgin Islands enacted standing upon taxpayers, without the demonstration of a particularized injury, pursuant to 5 V.I.C. § 80. The U.S. Court of Appeals for the Third Circuit has approved 5 V.I.C. § 80. *See, Smith v. Government of the Virgin Islands*, 329 F.2d 131, 133, 4 V.I. 489 (3d Cir. 1964) ("If there has been a violation or evasion of the law ... damage is presumed to result to all taxpayers. The object of the suit is to prevent the violation of the law."), *quoted in Berne Corp. v. Government of Virgin Islands*, 120 F. Supp. 2d 528, 535 (D.V.I. 2000).

■ Here, the plaintiff has invoked jurisdiction pursuant to V.I. CODE ANN. tit. 5, § 80; alleged he is a Virgin Islands taxpayer; requested declaratory relief to mandate the Government to perform its statutory duties; and alleged wrongful disbursement of territorial funds. Accordingly, the plaintiff has standing to bring this action.

## B. V.I. CODE ANN. tit. 33, § 1102(b) is Not So Vague and Ambiguous So As To Be Void and Unenforceable

In the case *sub judice* the defendants allege that the statute in question, V.I. CODE ANN. tit. 33 § 1102(b), is vague and ambiguous, and as such is void and unenforceable.

■ A party may assert that a statute is unconstitutionally vague and ambiguous and thus violative of the due process clause of the Fifth Amendment. The 'void for vagueness' doctrine as applied to due process claims, is an argument used essentially against criminal statutes. A statute is void for vagueness when its prohibition is so vague as to leave an individual without knowledge of the nature of the activity that is

---

by the activity herein referred to, may maintain an action for equitable or declaratory relief, or both, against an officer or employee of the state who in the course of his or her duties has caused, is now causing, or is about to cause a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds or state property [emphasis added].

[12] CAL. CIV. PROC. CODE § 526(a) states in pertinent part:

An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein.

prohibited. To pass constitutional muster, statutes challenged as vague must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and provide explicit standards for those who apply it to avoid arbitrary and discriminatory enforcement. 16B AM. JUR. 2D, *Constitutional Law* § 920 (2002). The Supreme Court, however, has recognized that a non-criminal statute is unconstitutionally vague under the due process clause, where its language does not convey sufficiently definite warning as to the proscribed conduct, when measured by common understanding and practices, or stated otherwise, where its language is such that men of common intelligence must necessarily guess at its meaning. A statute is not unconstitutionally vague where it is set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with. *Arnett v Kennedy*, 40 L. Ed. 2d 823, 827. Additionally, the Supreme Court has upheld noncriminal statutes where statutory construction by a state court has removed any alleged vagueness. *Id.* at 827. *See also Pearson v Probate Court of Ramsey County*, 309 U.S. 270, 84 L. Ed. 744, 60 S. Ct. 523 (1940).

■ Notwithstanding the defendants' contentions that V.I. CODE ANN. tit. 33, § 1102(b) is vague and ambiguous, if the Court is able to reasonably interpret the statute in a matter that eliminates any perceived ambiguity, the statute will be upheld. It is the Court's duty, where possible, to give a statute a meaning that would support it, rather than invalidate it. *Lynch v Overholser*, 369 U.S. 705, 8 L. Ed. 2d 211, 82 S. Ct. 1063 (1962). Courts will not adopt a construction of a statute which would raise novel and important questions as to its constitutionality where the case may justly and reasonably be decided under a construction by which the statute is constitutional. *Jefferson Construction Overseas, Inc. v. Government of the Virgin Islands*, 237 F. Supp. 125 (D.V.I. 1964). Furthermore, the Courts [shall] favor not only a construction of validity by viewing statutes, insofar as applicable, as a whole, but also [favor] a construction which, if reasonable, gives effect to the statutes as a whole, or to as much to them as possible. *Government of the Virgin Islands v Caneel Bay Plantation, Inc.*, 5 V.I. 655, 662 (D.V.I. 1966). Moreover, the Court must determine if the statute can be interpreted in such a way as to eliminate any presumed vagueness and thus avoid the constitutionality question entirely.

271

Where a statutory provision might reasonably bear two or more constructions, interpretation is appropriate. *Monsanto v. Government of the Virgin Islands*, 20 V.I. 446, 452 (Terr. Ct. 1984). Our starting point is the language of the statute. *Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1, 5, 86 L. Ed. 2d 1, 105 S. Ct. 2458 (1985). However, in interpreting a statute, the Court is not guided by a single sentence or portion of a sentence, but looks to the provisions of the whole law, and to its object and policy. *Dole v. United Steel Workers of America*, 494 U.S. 26, 34, 108 L. Ed. 2d 23, 110 S. Ct. 929 (1990). The purpose of interpreting the statute is to give effect to the intent of the legislature (citations omitted). The language itself is the best evidence of the legislative intent, and there is a presumption that the legislative intent is expressed by the ordinary meaning of the words used (citations omitted). Furthermore, 'it is a cardinal rule of statutory construction that when the language of a statute is clear, a court should look no farther than those words in interpreting the statute.' (Citation omitted)." *Jeffers v. Meridian Engineering, Inc.*, 27 V.I. 105, 108 (Terr. Ct. 1992). However, "'[the] intention prevails over the letter.' (Citation omitted)." *Government of the Virgin Islands v Knight*, 989 F.2d 619, 28 V.I. 249, 259 (3d Cir. 1993). The U.S. Court of Appeals for the Third Circuit "has noted that 'the surest way to misinterpret a statute or a rule is to follow its literal language without reference to its purpose.' (Citations omitted)." (*Id.*). The court must look to the legislative history of the statute. *Island Periodicals v. Olive*, 20 V.I. 258, 259 (D.V.I. 1991). These rules have been applied to civil cases. *See San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3d Cir. 1992).

 Applying the statutory rules of construction, this Court finds that Title 33, Virgin Islands Code § 1102(b), can be interpreted in such a matter as to avoid vagueness and ambiguity. Accordingly, V.I. CODE ANN. tit. 33, § 1102(b) is neither void nor unenforceable.

## C. Title 33 Virgin Islands Code § 1102(b) Assigns Duties to the Director of the Internal Revenue Bureau That Are Susceptible To the Issuance of a Mandamus

 Mandamus relief is an extraordinary remedy and should only be issued if there are compelling circumstances. *Richardson v. Virgin Islands Housing Authority*, 18 V.I. 351 (D.V.I. 1981). In the case *sub judice*, the plaintiff seeks to have the court order the Director of the

Bureau of Internal Revenue to comply with the mandates of the statute. The defendants argue that the statute is unenforceable because the Director does not have the authority to do the acts proscribed by the statute. Moreover, the defendants assert that the duties given to the Director are powers vested solely with the Commissioner of Finance.

 Mandamus-like relief may be granted when the plaintiff has a clear right to the relief sought. Three (3) elements are required for issuance of a writ of mandamus: (1) a clear right in the plaintiff for the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available. *Democratic Party v. Board of Elections*, 649 F. Supp. 1549, 22 V.I. 465 (D.V.I. 1986).

 The defendants' argument raises an issue specifically with the plaintiff's ability to satisfy the second element required for the issuance of the mandamus. The defendants maintain that the Director of the Bureau of Internal Revenue does not have the authority or the duty to do the act recited at 33 V.I.C. § 1102(b). Mandamus is appropriate when [an] official's duty to act is ministerial in nature and so plain as to be free from doubt. Even where [an] officials responsibilities are in some respects discretionary, mandamus is appropriate if statutory or regulatory standards delimiting scope or manner in which such discretion can be exercised have been ignored or violated. *Silveyra v Moschorak*, 989 F.2d 1012 (9th Cir. 1993). Federally, the Mandamus Act, 28 U.S.C.A. § 1361, creates potential subject matter jurisdiction in only two circumstances: (1) where [a] government official is required to perform clear, ministerial and non-discretionary duty, that is peremptory and unmistakable, certain, inflexible, clear beyond debate, positively commanded and so plainly prescribed as to be free from doubt; and (2) where plaintiff seeks to compel [an] official to undertake neglected action that required exercise of discretion to carry out, in which context mandamus relief is available only to compel action itself, but not to direct exercise of discretion in a particular way, not to direct retraction or reversal of action already taken.[13] *Stehney v. Perry*, 907 F. Supp 806, 820 (D. N.J. 1995), *affirmed* 101 F.3d 925, 934 (3d Cir. 1996). Locally, Title 5 V.I.C. 1361(a) allows for the court to "compel performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. As with the

---

[13] The local statute, V.I. CODE ANN. Tit. 5, § 1361.

federal Mandamus Act, the local statute prohibits the court from directing the exercise of discretion. *Connor v. Emanuel*, 25 V.I. 31, 34 (Terr. Ct. 1990).

Subsection 1102(b) was added to the Virgin Islands Code on February 20, 1964.[14] The statute initially gave the Commissioner of Finance ("Commissioner") the duties of subsection 1102(b) in addition to his authority to make credits and refunds of internal revenue taxes under subsection 1102(a).[15] V.I. CODE ANN. tit. 33 § 1102(b) in 1964 read:

> The Commissioner of Finance shall maintain in the general ledger of the General Fund in the Treasury of the Virgin Islands an account to be designated the Reserve for Internal Revenue Tax Refunds. There shall be credited directly to such reserve account monthly not more than 3 percent of the receipts from *internal revenue* collections. The refunds or credits administratively granted under subsection (a) of this section shall be paid or credited by the Commissioner of Finance, without the necessity for annual appropriation and shall be chargeable to the reserve account. V.I. CODE ANN. tit. 33, § 1102(b) (1964).

The Department of Finance ("Department") is within the executive branch of government, with its supervisor, the Commissioner, appointed by the Governor, subject to Senate confirmation. V.I. CODE ANN. tit. 3 § 172. The purpose of the department is to exercise general control over the enforcement of the laws relating to finance. Among other duties, the Department, pre-1980 was to, "superintend and regulate the collection of *all revenue*". V.I. CODE ANN. tit. 3 § 177(a)(2).[16]

The Virgin Islands Bureau of Internal Revenue ("IRB") was created on August 22, 1980.[17] In doing so the Legislature assigned many of the duties formerly held by the Department of Finance to the newly created Bureau of Internal Revenue. The intent of the Legislature was to create a "separate, single-purpose tax collection agency [that] would improve the

---

[14] V.I. CODE ANN. tit. 33 § 1102, 1964 V.I. Sess. Laws 1082.

[15] *Id.*

[16] In 1980, the duties of the Department of Finance were amended to accommodate the creation of the Internal Revenue Bureau.

[17] V.I. CODE ANN. tit. 33 § 680; 1980 Sess. Laws 4473.

administration and collection of taxes in the Virgin Islands".[18] The Bureau of Internal Revenue is a separate and independent agency, with its Director appointed by the Governor, subject to confirmation by the Senate. V.I. CODE ANN. tit. 33 § 680. The powers and duties of the Bureau and its Director are delineated in, V.I. CODE ANN. tit. 33 § 681. The Bureau of Internal Revenue is in part charged with the duty of "administer[ing] and enforce[ing] the laws imposing corporate and *individual income taxes*, gross receipts, trade and excise taxes, production taxes, gift taxes, highway users' taxes, hotel occupancy taxes, inheritance taxes, fuel taxes, miscellaneous excise taxes, and all laws relating thereto". V.I. CODE ANN. tit. 33 § 681(a) Subsection (h) of V.I. CODE ANN. tit. 33 § 681, mandates that the Director, in addition to all other assigned duties, "shall perform such other duties *as may be assigned by law*". The inclusion of this 'catchall', allows for the expansion of duties held by the Director, including but not limited to those required of him pursuant to V.I. CODE ANN. tit. 33 § 681.

The Legislature is clear in its intent for the Bureau of Internal Revenue to have control over the collection of *income tax revenue*. Title 3 Virgin Islands Code § 177(a)(2), was amended in 1980 upon the creation of the "IRB". As of 1980, to present the statute reads that the Department of Finance is to, "superintend and regulate the collection of all revenue *except tax revenues required to be collected by the Bureau of Internal Revenue*". V.I. CODE ANN. tit. 3 § 177(a)(2). The Legislature was clear in its desire for [income] tax revenues to be held separate and apart from all other revenues handled by the Department of Finance. The Legislature further expressed its intent for the Bureau of Internal Revenue to have control over income tax revenue, in V.I. CODE ANN. tit. 3 § 179, where it mandates the Department of Finance to maintain a refund reserve account for "other taxes, [including] all taxes *other than income taxes*."

In 1980, the enabling legislation for V.I. CODE ANN. tit. 33 § 1102(b) substituted "Director of the Bureau of Internal Revenue" ("Director"), wherever "Commissioner of Finance" appeared in title 33.[19] The effect the legislation was to give all the duties of sections 1102 (a) and (b) to

---

[18] 1980 Sess. Laws 4473.

[19] 1980 V.I. Sess. Laws 4473, § 3(a)(1)(2).

the Director.[20] V.I. CODE ANN. tit. 33 § 1102(b) was amended on April 12, 1999, substituting "income tax" for "internal revenue" preceding "collection" at the end of the second sentence, further demonstrating the Legislature's intent for the Director to assume the duties assigned in this statute.[21]

Subsection 1102(b), as amended, currently reads:

> (b) The Director of the Bureau of Internal Revenue shall maintain in the general ledger of the General Fund in the Treasury of the Virgin Islands an account to be designated the Reserve for *Internal Revenue* Tax Refunds. There shall be credited directly to such reserve account monthly *not less than 10 percent* of the receipts from income tax collections. The refunds or credits administratively granted under subsection (a) of this section shall be paid or credited by *the Director of the Bureau of Internal Revenue*, without the necessity for annual appropriation and shall be chargeable to the reserve account. V.I. CODE ANN. tit. 33, § 1102(b) (2002 Supp.).[22]

The statute currently mandates that the Director perform three duties, he shall:

> 1. *Maintain* in the general ledger of the General Fund in the Treasury of the Virgin Islands an account to be designated the Reserve for Internal Revenue Tax Refunds;

> 2. *Credit* directly to such reserve account monthly *not less than 10 percent* of the receipts from income tax collections; and

> 3. *Refund or credit* amounts administratively consistent with subsection (a) without the necessity of obtaining an annual appropriation by charging amount to the reserve account.

---

[20] *Id.*

[21] 1999 V.I. Sess. Laws 6278.

[22] The second sentence of the statute was revised on June 4, 1968 to read: "There shall be credited directly to such reserve account monthly *not less than 4.5 percent* of the receipts from internal revenue collections." 1968 V.I. Sess. Laws 2221. The statute was again revised on April 12, 1999, when "10 percent" was substituted for "4.5 percent" in the second sentence. 1999 V.I. Sess. Laws 6278.

■ As discussed above, mandamus relief can only be granted to peremptory, ministerial duties. The Court then must consider each duty and determine if that duty is eligible for mandamus relief. The first duty assigned to the Director is non-discretionary, thus mandamus relief may be granted, if warranted. The second and the third duties are not wholly non-discretionary and consequently, not susceptible to [full] mandamus relief. The Court could only require and/or mandate that the Director credit *"not less than 10 percent"*, but any amount in excess of that is discretionary and outside of judicial direction. Additionally, the Court may require that the Director, *"refund or credit"*, but may not specify which he must do. As stated earlier, the Court may only compel the action itself. The Court cannot direct the exercise of discretion in a particular way, nor can it direct retraction or reversal of an action already taken. Accordingly, the plaintiff has the right to seek mandamus relief, against the defendants, in accordance with the aforesaid mentioned restrictions, if the plaintiff can prove by the preponderance of the evidence that the defendants have failed to perform their statutory, ministerial duties

## IV. CONCLUSION

The Plaintiff has standing to bring this action and has a claim upon which relief can be granted. The defendants in its motion to dismiss did not allege any constitutional violation arising from any vagueness or ambiguity inherent in the statute. The argument appears to be that the statute is so vague that it is not interpretable, nor enforceable. It is within the court's authority, however, to reasonably interpret a statute that is not clear on its face. As the statute can be reasonably interpreted, it is not so vague and ambiguous as to be void and unenforceable. The defendant also alleged that the statute was unenforceable because it gives powers to the Director of Internal Revenue, that are normally reserved to the Commissioner of Finance. The Legislature was clear in its intent to create an independent tax [income] collection agency (IRB). Some of the duties previously given to the Commissioner of Finance were statutory and ministerial and assigned or statutorily transferred to the Bureau of Internal Revenue. Thus, mandamus would be an appropriate relief in this matter, if it is proven that the Director failed or neglected to perform the ministerial duties required of him to perform by law.

Accordingly, the Defendant's motion to dismiss is denied.