I. Facts and Procedural History
In the 2004 mayoral election for the City of Guntersville, candidate Bob Hembree challenged the incumbent, James Townson. After the votes were tallied on election day, Townson received 1,242 votes, and Hembree received 1,241 votes. Townson was declared the winner. Thereafter, Locresia Stonicher and Joy Cranford, two voters who had voted for Hembree, filed an election contest in the Marshall Circuit Court. The issues in the election contest concerned mainly the validity of some votes cast by absentee ballots.
After a bench trial and a posttrial hearing in the election contest in which the trial judge reviewed the absentee ballots cast, the trial court entered a final count of 1,226 votes for Townson and 1,228 votes for Hembree, thus overturning the results of the election.[1] Townson appeals, and Stonicher and Cranford cross-appeal, each side arguing that the trial court impermissibly included or excluded certain votes. We agree with Stonicher and Cranford that the trial court should have excluded the votes of those voters for Townson who included an improper form of identification with their absentee ballots. Because our decision on that issue renders moot the other issues involved in this case, we pretermit discussion of those other issues.
 II. Standard of Review
The dispositive issue on appeal involves a question of law. A trial court's rulings on questions of law are reviewed de novo.Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala. 2004).
 III. Analysis A.
Stonicher and Cranford argue that the trial court should have excluded the *Page 1064 
votes of those voters who included an improper form of identification with their absentee ballots. Section 17-11A-1, Ala. Code 1975, provides:
 "(a) As used in this section, the term `valid photo identification' may include in addition to governmentally produced photo identifications, identification cards containing the photo of the elector produced by employers for employees and identification cards containing the photo of the elector produced by a public or private college, university, or postgraduate technical or professional school located within the state.
 "(b) Each elector shall provide identification to an appropriate election official prior to voting. A voter required to show identification when voting in person shall present to the appropriate election official either of the following forms of identification:
"(1) A current valid photo identification.
 "(2) A copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter. The term `other government document' may include, but is not limited to, any of the following:
 "a. A valid identification card issued by a branch, department, agency, or entity of the State of Alabama, any other state, or the United States authorized by law to issue personal identification.
"b. A valid United States passport.
"c. A valid Alabama hunting or fishing license.
 "d. A valid Alabama permit to carry a pistol or revolver.
 "e. A valid pilot's license issued by the Federal Aviation Administration or other authorized agency of the United States.
 "f. A valid United States military identification card.
 "g. A certified copy of the elector's birth certificate.
"h. A valid Social Security card.
"i. Certified naturalization documentation.
 "j. A certified copy of court records showing adoption or name change.
 "k. A valid Medicaid card, Medicare card, or an Electronic Benefits Transfer Card (formerly referred to as a `food stamp card').
 "(c) For voters required to show identification when voting by mail, the voter shall submit with the ballot a copy of one of the forms of identification listed in subsection (b)."
(Emphasis added.)
It is undisputed that at least 30 absentee voters who voted for Townson provided with their absentee ballots a form of identification that was not proper under § 17-11A-1.[2]
Stonicher and Cranford argue that the trial court erred in allowing those voters to "cure" that defect by providing a proper form of identification at the trial of the election contest. We agree.[3] *Page 1065 
The plain language of § 17-11A-1(c) makes it mandatory that an absentee voter provide proper identification with an absentee ballot: "For voters required to show identification when voting by mail, the voter shall submit with the ballot a copy of one ofthe forms of identification listed in subsection (b)." InEubanks v. Hale, 752 So.2d 1113, 1150 (Ala. 1999) (opinion on return to second remand), this Court stated:
"`It is the established law in this state that:
 "`". . . a person be not disfranchised as to his right as an elector . . . when he has made an honest effort to comply with the law and in that effort has substantially complied with the statutory mandates."'"
(Quoting Woodall v. City of Gadsden, 278 Ala. 634, 636,179 So.2d 759, 761 (1965).)
The voters whose forms of identification provided with their absentee ballots were improper did not substantially comply with the statutory mandate that "the voter shall submit with the ballot a copy of one of the forms of identification listed in subsection (b)." § 17-11A-1(c). The evidence at trial indicated 1) that the absentee ballots sent to voters contained instructions as to what forms of identification were permissible[4] and 2) that the substantial majority of the voters whose absentee ballots were being challenged on this basis in fact possessed a valid form of identification but simply neglected to include a copy of it with their ballots. Under the circumstances, it is difficult to conclude that those voters failing to provide proper identification made an "honest effort to comply with the law." Eubanks, 752 So.2d at 1150.
In Eubanks, this Court held that the trial court had correctly excluded the absentee votes of voters who had indicated on their absentee-ballot affidavits an inaccurate reason for voting absentee. The relevant inquiry in Eubanks was whether those voters had failed to "`substantial[ly] compl[y] with the essential requirements of the absentee voting law,'" and whether "the submission of the absentee ballot with [an inaccurate reason for voting absentee] `adversely affect[ed] the sanctity of the ballot and the integrity of the election.'" 752 So.2d at 1153
(quoting Wells v. Ellis, 551 So.2d 382, 384 (Ala. 1989)). The Court in Eubanks held that such a defect was fatal, notwithstanding the fact that the voters who had provided an inaccurate reason for voting absentee had other, valid reasons for voting absentee. 752 So.2d 1151-57. In the instant case, we hold that the voters who included identification with their absentee ballots that did not conform to the requirements of § 17-11A-1(b) failed to substantially comply with the essential requirements of the absentee-voting law.
Moreover, we find persuasive Stonicher and Cranford's argument that to count the votes of voters who fail to comply with the essential requirement of submitting proper identification with their absentee ballots would have the effect of disenfranchising qualified electors who choose not to vote rather than to make the effort to comply *Page 1066 
with the absentee-voting requirements. A potential voter who was ignorant of a rule that he could cure at an election contest his failure to submit proper identification with his absentee ballot would be justified in complaining that he had been misled into not voting. Cf. Roe v. Alabama, 43 F.3d 574 (11th Cir. 1995) ("[T]he change in the rules after the election would have the effect of disenfranchising those who would have voted but for the inconvenience imposed by the notarization/witness requirement.").
 B.
Townson points out that § 17-11A-1(e) provides that "[a]n individual required to present identification in accordance with this section who is unable to meet the identification requirements of this section shall be permitted to vote by a challenged . . . ballot, as provided for by law." He also cites Ala. Op. Att'y Gen. No. 2004-161 (June 21, 2004), which provides: "[A]n absentee ballot in a municipal election that does not contain proper identification shall automatically be treated as a challenged ballot by the poll workers and should be counted."
To the extent that the attorney general opinion concludes that absentee ballots unaccompanied by proper identification in municipal elections are nevertheless to be counted in an election contest, we disagree.[5] If the voters who provided improper identification with their absentee ballots are treated as being "unable to meet the identification requirements of [§ 17-11A-1]," § 17-11A-1(e) nevertheless permits those voters to vote challenged ballots only "as provided for by law." (Emphasis added.) The challenged-ballot procedure applicable to municipal elections, provided in part by §§ 11-46-41 and11-46-112, Ala. Code 1975, requires a voter whose vote has been challenged to take a challenge oath and to complete a proof-of-identity affidavit. In taking the challenge oath, the voter must swear that he or she possesses the qualifications necessary to voting in the election, and he or she must identify two other persons who have personal knowledge of the voter's residence. The proof-of-identity affidavit requires a qualified elector who is a "freeholder and householder" to vouch for the identity and residence of the voter being challenged. The absentee voters in this case who submitted improper identification with their absentee ballots did not comply with the requirements of challenged-ballot voting, i.e., they did not complete challenge oaths or proof-of-identity affidavits. Therefore, § 17-11A-1(e), which allows voters who are "unable to meet the identification requirements . . . to vote by a challenged . . . ballot, as provided for by law," does not excuse the failure of those voters to include a proper form of identification with their absentee ballots.[6] *Page 1067 
 IV.
In the instant case, the failure of the absentee voters to include proper identification with their absentee ballots was a defect fatal to the votes cast by those absentee voters. The trial court erred in allowing those voters to "cure" that defect by presenting acceptable forms of identification at trial. Therefore, we reverse the trial court's decision to count those votes, and we subtract them from Townson's total vote count. Because the subtraction of those 30 votes from Townson's vote count renders moot the other arguments on appeal, we pretermit discussion of those arguments. We affirm the trial court's judgment insofar as it declares Hembree the winner of the election, and we vacate the stay of the enforcement of that judgment.
AFFIRMED; STAY VACATED.
NABERS, C.J., and SEE, HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
[1] The trial court stayed enforcement of its judgment pending resolution of this appeal.
[2] The parties agree that a ruling adverse to Townson on 30 absentee votes would render moot Townson's other challenges, because those other challenges do not involve enough votes to offset 30 votes.
[3] Among the issues rendered moot is the issue concerning the trial court's exclusion of the absentee votes of three voters for Townson who included improper forms of identification with their ballots because they failed to cure that defect by presenting proper identification at trial. Townson argues that the trial court erred in determining that the forms of identification of two of those voters, submitted with their ballots, were improper. One of those voters submitted a utility bill that arguably was not "current," as that term is used in § 17-11A-1(b)(2); the other submitted an account statement from a hospital that arguably did not meet the definition of a "governmental document," as that term is used in § 17-11A-1(b)(2). Because of the effect of our reversal of the trial court's decision as to at least 30 absentee voters, as discussed in note 2, it is not necessary to decide whether the trial court correctly rejected those ballots based on improper forms of identification.
[4] Townson does not contend that there is any deficiency in the clarity of the instructions sent to the voters with the absentee ballots.
[5] An attorney general's opinion is not binding on this Court and does not have the effect of law. Farmer v. Hypo Holdings,Inc., 675 So.2d 387, 390 (Ala. 1996).
[6] Section 17-11A-1(e) also states that voters unable to comply with the identification requirements may vote a "provisional" ballot. However, during oral argument, the parties agreed that the provisional-ballot procedures in § 17-10A-1 et seq., Ala. Code 1975, are inapplicable to municipal elections. See Ala. Op. Att'y Gen. No. 2003-207 (July 31, 2003) (recognizing inconsistency between the provisional-voting procedures and the framework established by the laws for conducting municipal elections and expressing the opinion that the legislature did not intend provisional voting to apply in municipal elections); §17-1-1, Ala. Code 1975 ("All of the provisions of this title [including the provisional-voting procedures] shall apply to . . . elections by . . . municipalities held in this state, except in cases where the provisions of this title are inconsistent or in conflict with the provisions of a law governing . . . municipal elections."). Whether the unavailability of such procedures in municipal elections is sound public policy is a matter for the legislature, not this Court.