[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 645 
In this challenge to a mayoral election, brought by mayoral candidate Vanessa Hill, J.B. (Johnny) Washington appeals the decision of the Hale Circuit Court declaring Hill to have been duly elected as mayor of the Town of Greensboro. We affirm.
 I. Facts and Procedural History
The Town of Greensboro held municipal elections in August 2004. A runoff election in the mayoral race was held on September 15, 2004; the candidates in the runoff election were Hill, who had received the most votes in the August election, and Washington. The certified results of the runoff election showed that Washington had prevailed; he was certified as having received 762 votes (511 poll votes and 251 absentee votes), and Hill was certified as having received 672 votes (620 poll votes and 52 absentee votes). *Page 646 
Hill filed an election contest on September 20, 2004. On September 22 she submitted as security for the costs of the contest a waiver of her and her heirs' right to all personal property exemptions allowed under the laws of Alabama. The circuit clerk denied the security the same day, and the next day Hill added a cosigner for the same form of security. The clerk also rejected the second tendered security, and on September 30 Hill filed an amended election contest along with a request by counsel for direction from the clerk regarding the necessary security. On November 18, 2004, Hill paid the cash bond of $2,500 specified by the clerk.
After every circuit judge in the county recused himself or herself, the Chief Justice of the Alabama Supreme Court on October 25, 2004, appointed Judge William Shashy of the Montgomery Circuit Court to preside over the case. After considering objections based on jurisdiction and procedure to Hill's election challenge and ordering briefing of those issues, the trial court ruled that the election contest should proceed. On June 9, 2005, the trial court ordered the office of the attorney general to take possession of the election materials, including the ballots, and appointed James H. Anderson as special master to oversee the pretrial issues; Anderson was subsequently appointed to preside over the hearing of the case as well. Washington continued to object to the conduct of the discovery as well as to the jurisdiction of the trial court and the appointment of the special master. His objections were overruled, and the case was heard in December 2005 and January 2006.
The special master released his report on January 23, 2006. It included findings that certain voters' and witnesses' signatures on the ballots were forged and that votes were also due to be disqualified for other reasons. In all, the special master found that at least 148 illegal absentee votes had been cast for Washington and 8 illegal absentee ballots had been cast for Hill. After subtracting the illegal votes from the total votes for each of the two candidates, the special master found that Hill had prevailed in the election by a vote of 664 to 614. The trial court adopted the findings of the special master in full, ordered that the results of the runoff election be overturned, and declared Hill to be the winner. The trial court also suspended its judgment pending the outcome of the appeal.
Washington appealed. His brief with this Court was timely filed. Counsel for Hill filed her brief four days late. The form of the brief was improper, and counsel for Hill submitted a corrected brief three days later. Washington moved this Court to strike Hill's brief as untimely or to at least strike the portions of Hill's brief averring facts unsupported by, or not properly citing to, the record. We grant the motion only as to those portions of Hill's brief that lack proper citation, in order that the voters of Greensboro not be penalized by the shortcomings of Hill's counsel.
We now consider Washington's arguments that the trial court exceeded its discretion by (1) allowing the election contest to proceed "even though all jurisdictional requirements were not all met"; (2) allowing the hearing of the case to commence even though Hill "failed to timely file [her] discovery request" and "failed to file proper disclosures"; and (3) improperly disqualifying voters pursuant to various provisions of the Alabama Code.
 II. Standard of Review
An election contest is strictly statutory, and the statute must be strictly observed and construed. Watters v. Lyons,188 Ala. 525, 66 So. 436 (1914). A trial court's findings of fact in an election *Page 647 
contest will not be disturbed unless they are plainly and palpably wrong and not supported by the evidence. Williams v.Lide, 628 So.2d 531, 534 (Ala. 1993). A special master's report in a nonjury action is accorded the same weight as a jury verdict; therefore, it is not to be disturbed by the trial court unless it is plainly and palpably wrong. Burgess Mining Constr. Corp. v. Lees, 440 So.2d 321, 327 (Ala. 1983). Furthermore, to the extent a trial court has adopted the findings of a special master, an appellate court will not disturb those findings unless they are clearly erroneous. See Rule 53(e)(2), Ala. R. Civ. P., and Committee Comments on 1973 Adoption of Rule 53.
 III. Discussion A. Jurisdictional Requirements
Washington correctly notes that if a complaint initiating an election contest is defective as to any of the jurisdictional requirements, it cannot be amended by adding the missing element after the time for commencing the contest has expired. Groomv. Taylor, 235 Ala. 247, 178 So. 33 (1937). Washington next argues that Hill's election complaint is jurisdictionally defective because as initially filed it does not state that Hill was a qualified elector of the Town of Greensboro; it does not give the date and time of the election she is contesting; and it does not state as part of her affidavit that the statements contained in her complaint were true. These arguments are without merit.
Section 11-46-69(a), Ala. Code 1975, provides that a qualified elector has standing to contest a municipal election: "The election of any person declared elected to any office of a city or town may be contested by any person who was at the time of the election a qualified elector of such city or town. . . ." Furthermore, "[s]uch contest shall be instituted in the manner prescribed by Section 17-15-29," which provides:
 "[T]he party contesting must file in the office of the clerk of the circuit court of the county in which the election was held, a statement in writing, verified by affidavit, of the grounds of the contest as provided in this article and must give good and sufficient security for the costs of the contest, to be approved by the clerk."
Each of these statutory requirements is fundamentally one of substance rather than form. Thus a contestant to a mayoral race must possess the status of a qualified elector but need not make a specific affirmative statement in the complaint that the contestant is a qualified elector.Some statement in writing of the grounds of the contest is required, but the Code does not specify the exactwording of that statement. An affidavit is required, but no specific form is required. Similarly, provided some form of security is given, this jurisdictional requirement is met, even if the form of the security is initially rejected by the clerk.Dobbins v. City of Anniston, 469 So.2d 583, 585
(Ala. 1985). In fact, provided the substance of an element necessary for jurisdiction is present and any necessary filing is timely, any deficiency in form may be cured by amendment. See, e.g., Wilson v. Duncan, 114 Ala. 659, 21 So. 1017 (1897) (recognizing the form of a timely filed bond may be amended).
Although Washington is correct in his assertion that Hill did not state in her initial complaint that she is a qualified elector of the Town of Greensboro, nothing in the record indicates that she is not a qualified elector, nor is she required specifically to so state. In fact, Washington acknowledges in his brief that Hill's complaint was "verified," that Hill was "duly sworn," and that "Anne S. Bailey signed as *Page 648 
a notary." Consequently, the fact that Hill stated she "was a candidate for mayor of Greensboro, Alabama," in a duly signed and notarized statement is evidence that she possessed the status of a qualified elector to meet the jurisdictional requirement; otherwise, she could not have become a candidate.
Washington nevertheless contends that mere status as a qualified elector is insufficient when challenging the outcome of a mayoral election under Ala. Code 1975, § 17-15-20, which requires that an elector "make a statement in writing setting forth specifically . . . that he was a qualified voter when the election was held." However, Ala. Code 1975, § 11-46-69, which governs municipal elections, does not reference § 17-15-20 as a source of jurisdictional requirements for a contest of a municipal election. Absent such incorporation by reference, Washington must explain why strict construction of § 17-15-20 does not require limiting its application to those offices specified in its text: "the office of senator, representative in the Legislature, judge of the circuit court or district court, any office which is filled by the vote of a single county or constable." Washington has failed to demonstrate why this Court need go beyond the text of § 17-15-20, which, on its face, does not apply to mayoral elections. We see no other reason it must apply, and we conclude that the trial court correctly rejected Washington's argument that Hill was not qualified to contest the election merely because she did not state in her initial complaint that she was a qualified elector of the Town of Greensboro when the election was held.
Furthermore, the applicable statute does not require the statement in an election contest to, as Washington asserts, include specific reference to the date and time of the election being contested or specific wording in an affidavit averring that the statement is true. What the text of the statute requires is language that makes sufficiently clear which election is being challenged and some form of an affidavit by the contestant that communicates the grounds of the contest. As a result, we conclude that the trial court did not err by failing to require stricter adhesion to the form of the election-contest statement than is required by the text of the statute.
Washington next argues that "[f]rom the outset of this contest . . . [Hill] failed to file the necessary security required by the statute" because she did not post a security bond that was approved by the clerk of the circuit court in a timely manner. In support of his argument, Washington cites Dobbins, supra; Bowen v. Holcombe, 204 Ala. 549, 550, 87 So. 87,88 (1919); and Ala. Code 1975, § 11-46-69(b). These authorities, however, do not support Washington's argument.
In Dobbins, although this Court observed that the election contest must be commenced within five days after the results of the election are declared, pursuant to Ala. Code 1975, § 11-46-69(b), and that such contest should include the filing of security pursuant to the statutory requirement in Ala. Code 1975, § 17-15-29, we cited Bowen for the proposition that "as long as a contestant has complied `in form at least' with the statute, the contest should not be dismissed." 469 So.2d at 585. The law does not require that the initial security be acceptable to the clerk in order for the election contest to proceed; rather, it requires that the contestor make a good-faith effort by timely filing some form of security, and, if the initial security is deemed unacceptable by the clerk, the contestor will be permitted to amend or substitute the security: *Page 649 
 "[W]here an attempt was made to comply with the statute requiring bond, the fact that the bond may be insufficient, inadequate, or defective will not authorize dismissal of the contest; rather, the court should allow an amendment, and in some instances even a substitution, to be filed to correct the error."
Dobbins, 469 So.2d at 585.
In the present case, Hill did "attempt . . . to comply with the statute requiring bond" when she originally filed her security. When the clerk denied her initial security, Hill amended it by adding a cosigner. Then, when the clerk indicated that a $2,500 cash bond was required, Hill provided the bond as a substitute for her original security. Accordingly, the trial court was correct in finding that Hill did timely post a security bond pursuant to the statute and that all jurisdictional requirements were met.
 B. Discovery and Disclosure
Washington next argues that because Hill failed to properly move to inspect the election materials, which were in the possession of the attorney general's office, "within ten days of the filing of the contest with the Court" as required by Ala. Code 1975, § 17-15-7, her motion to inspect those materials was untimely. However, because Washington raises this argument for the first time on appeal, it is not properly before us. SeeEx parte Coulliette, 857 So.2d 793 (Ala. 2003).
Washington further argues that Hill should have been required to provide Washington notice of "the nature of the evidence as to each area of [Hill]'s allegations" before Hill was allowed to examine the sealed election materials. Washington also states that such notice should be provided "ten days before the trial," pursuant to Ala. Code 1975, § 17-15-21. However, these two positions either are mutually exclusive or, to harmonize them, require discovery to take place no earlier than 10 days before the date set for trial. Compressing discovery to within 10 days of the trial is not required by the statute, and Hill did provide Washington the required notice 10 days in advance of the hearing. Consequently, we do not find that the trial court erred in failing to find that Hill did not give Washington proper notice of the evidence she intended to use to challenge the ballots.
 C. Voter Disqualification
Washington argues that the trial court erred in disqualifying absentee ballots under various provisions of the Alabama Code. We consider these provisions individually.
1. Missing postmarks
Washington first argues that the trial court "disqualified over 102 voters[1] on the grounds that [the absentee ballots] were not postmarked by the date mandated" by Ala. Code 1975, § 17-10-23. According to Washington, "[t]his finding is not only contrary to the facts presented into evidence, but also contrary to the requirements set out in [§ 17-10-23]." In support of this contention, Washington cites testimony by the elections manager to the effect that she had retrieved some of the prospective ballots from the United States Postal Service that did not have postmarks. Washington also cited testimony by the circuit clerk of Hale County that in past elections unmetered ballots had been retrieved from the United States Post Office. Washington also argues that a strict construction of election-law requirements *Page 650 
is contrary to Alabama policy. We are not persuaded by these arguments. Ala. Code 1975, § 17-10-23, states, in relevant part:
 "No absentee ballot shall be opened or counted if received by the absentee election manager by mail, unless postmarked as of the date prior to the day of the election and received by mail not later than noon on the day of election. . . ."
The statutory language is clear that unless ballots retrieved from the United States Post Office are postmarked no later than the day before the election, they may not be counted. Thus the trial court was correct to reject the ballots that had been retrieved from the Post Office without such postmark.
2. Missing or improper identification
Washington also states that the trial court erred in "disqualifying over 71 votes on the grounds that the identification did not comport with" Ala. Code 1975, § 17-11A-1(b), "as further set out in Townson v.Stonicher, [933 So.2d 1062 (Ala. 2005)]." According to Washington, the elections manager failed to check the identification of those voters casting absentee ballots and to notify prospective voters of any deficiencies in their identification so they could remediate the deficiency pursuant to Ala. Code 1975, § 17-10A-2(c). Although Washington states that the failure to notify the voters of deficiencies in their identification was the fault of the elections manager, he provides no authority for his contention that the requirements of Ala. Code 1975, § 17-10A-2, may be set aside to remedy the elections manager's failure to notify voters of their errors in time for remediation. As a result, the trial court did not err by disqualifying those absentee votes that lacked the identification required by law.
3. Forgery
Washington's contention that the trial court erred by disqualifying 17 votes on the basis of expert testimony indicating that the signatures on the ballots were forged is likewise misplaced. Washington asserted that his expert refuted the testimony of Hill's expert, which was accepted by the trial court, but he provides no legal authority in support of his assertion that the trial court erred in finding the testimony of Hill's expert to be more persuasive than the testimony of his expert. Because Washington offered no legal authority in support of this argument, we need not consider it. An appellate court is not required to perform legal research for a party, Spradlinv. Birmingham Airport Auth., 613 So.2d 347 (Ala. 1993), or "to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument." Dykes v. Lane Trucking, Inc.,652 So.2d 248, 251 (Ala. 1994).
 D. Remedy
Washington's final argument is that the trial court erred in declaring Hill the winner of the runoff election rather than invalidating the election and ordering a new election because, he says, "[t]he voters and [Washington] should not have to suffer due to misconduct/omission by election officials." Because Washington also presents this argument without supplying any legal authority in support, this Court will not consider it. See Spradlin and Dykes, supra.
 IV. Conclusion
Washington has failed to demonstrate that the findings of the special master, adopted by the trial court, are plainly and palpably wrong and unsupported by the evidence. Instead, strict construction of the applicable statutes supports the decision *Page 651 
of the trial court declaring Hill to be the winner of the mayoral election. Consequently, we affirm the trial court's declaration that Hill was elected mayor of the Town of Greensboro in a runoff election held on September 14, 2004, and the trial court's suspension is hereby lifted.
AFFIRMED.
HARWOOD, STUART, and SMITH, JJ., concur.
NABERS, C.J., and SEE, LYONS, WOODALL, and BOLIN, JJ., concur in the result.
[1] Because some of the voters disqualified because of a failure to comply with a certain statutory provision were also disqualified on other grounds, the sum of the various categories of disqualification does not equal the aggregate change in total votes.